Tina WRIGHT, Plaintiff–Appellant,

v.

CITY OF KNOXVILLE, Defendant–Appellee,

and

Brian E. Anderson, Ronald E. Anderson and wife, Carol A. Anderson, Co–Defendants–Appellants.

Brian E. ANDERSON, Ronald E. Anderson and wife, Carol A. Anderson, Cross–Plaintiffs–Appellants,

v.

CITY OF KNOXVILLE, Cross–Defendant–Appellee.

Supreme Court of Tennessee, at Knoxville.

April 17, 1995.

Edward M. Graves and Carl Winkles, Knoxville, for Tina Wright.

K. Dickson Grissom and George Underwood, Knoxville, for City of Knoxville.

James T. Shea, IV and Beecher A. Bartlett, Jr., Knoxville, for Brian Anderson, Ronald Anderson and Carol Anderson.

## OPINION

DROWOTA, Justice.

In this negligence case, which concerns an automobile accident involving a private car and a police cruiser, plaintiffs Tina Wright, Brian Anderson, Ronald Anderson, and Carol Anderson appeal from the Court of Appeals' reversal of the trial court's judgment. This judgment provided that both drivers were negligent; and it allocated 75% of the fault to the police officer and 25% to Brian Anderson, the driver of the private car. This appeal presents two issues for our determination: (1) was the Court of Appeals correct in reversing the trial court's judgment and holding that the police officer was not negligent; and (2) assuming that the Court of Appeals did err in so holding, did the trial court err in its allocation of fault between the parties.

### FACTUAL AND PROCEDURAL HISTORY

The record reveals that on April 15, 1991, at about 4:30 in the afternoon, Officer Sherri Matlock of the Knoxville Police Department was traveling east on Kingston Pike when she received an emergency call to respond to "an accident with injuries" on Sutherland Avenue. Officer Matlock immediately turned on her siren and blue lights and continued on Kingston Pike toward the site of the accident. As she approached the intersection of Kingston Pike and Walker Springs Road (which runs north and south), Officer Matlock noticed that the traffic was extremely heavy and that the four eastbound lanes (two regular lanes and two left turn lanes) were stopped; the light was red for all lanes of Kingston Pike at this time. After bringing her vehicle to a stop behind several cars in the eastbound lanes, Officer Matlock crossed the center line of the road and drove, at approximately ten to fifteen miles per hour, in the westbound lane of Kingston Pike closest to the center line in order to circumvent the blocked intersection.

Meanwhile, the car driven by Brian Anderson, in which his girlfriend Tina Wright and his mother Carol Anderson were passengers, was stopped at the intersection's traffic light, facing northward on Walker Springs Road. Anderson was preparing to turn left onto Kingston Pike. Because his was the first car in line, Anderson proceeded into the intersection when the green turn arrow appeared. As he did so, Anderson heard a siren. Anderson either slowed or stopped his vehicle and began looking around in an attempt to locate the siren. Since he could not determine the location of the siren, and therefore did not know whether to stop or to keep driving, Anderson continued into the intersection. Just as Officer Matlock passed the lead car in the eastbound turning lane closest to the center line, the two vehicles collided in the westbound lane of Kingston Pike closest to the center line.

Anderson testified that because the police car was concealed behind four rows of cars in the eastbound lanes of Kingston Pike, he never saw it. Officer Matlock testified that she did not see Anderson's car until it was

two car lengths away. There is substantial testimony in the record that neither vehicle was traveling at a high rate of speed. There is also testimony that this particular intersection is one of the largest and most dangerous in the Knoxville area. It is undisputed that traffic was extremely heavy at the time of the accident.

Tina Wright brought an action against the City of Knoxville and Brian, Carol and Ronald Anderson (the father of Brian and husband of Carol) to recover for injuries sustained in the accident. The Andersons also brought an action against the City of Knoxville. After a nonjury trial, the trial court held that both Matlock and Anderson were negligent in operating their vehicles. The trial court's memorandum opinion provides, in pertinent part:

I think there is a responsibility on both sides here. The officer, because this is a very dangerous, big intersection, and the officer came up to the intersection and she saw that the lights were red for her and that the other traffic to her left was not moving and she should have realized that someone would have had the green light and also realized that because of the heavy traffic, it would be difficult for anybody to see anybody in this situation from the direction that the plaintiff vehicle was traveling. So I think there was a responsibility on both sides here.

The trial court then allocated 75% percent of the fault to Officer Matlock and 25% to Brian Anderson. The Court of Appeals, however, reversed that judgment, holding that Brian Anderson's actions were the sole proximate cause of the accident.

### ANALYSIS

■ The Court of Appeals based its holding on three statutes. The first, Tenn.Code Ann. § 55–8–108, concerns the rights of emergency vehicles to deviate from basic traffic laws. That section provides, in pertinent part:

(a) The driver of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to but not returning from a fire

alarm, may exercise the privileges set forth in this section, but subject to the conditions herein stated.

(b) The driver of the emergency vehicle may:

.    .    .    .    .

(2) Proceed past a red or stop signal or stop sign, but only after slowing down as may be necessary for safe operation;

.    .    .    .    .

(4) Disregard regulations governing direction of movement or turning in specified directions.

(c) The exemptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible and visual signals meeting the requirements of the applicable laws of this state ...

(d) The foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of the driver's own reckless disregard for the safety of others.

After citing § 55–8–108, the Court of Appeals noted that, in accordance with subsection (c), Officer Matlock had turned on her siren and blue lights before driving in the westbound lane of traffic; the Court also noted that the officer executed this undisputedly legal maneuver at a relatively low rate of speed, in accordance with the mandate of subsection (b)(2). The Court concluded from this that Officer Matlock did not breach the duty of due care enunciated in subsection (d).

Rather, the Court held that Brian Anderson's actions were the sole proximate cause of the accident; and it relied upon two statutes for this holding. The first, Tenn. Code Ann. § 55–8–132, concerns the duty of motorists to yield to emergency vehicles. That statute provides, in pertinent part:

(a) Upon the immediate approach of an authorized emergency vehicle making use of audible and visual signals meeting the requirements of the applicable laws of this state, or of a police vehicle properly and

lawfully making use of an audible signal only:

> (1) The driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the roadway clear of any intersection and shall stop and remain in such position until the authorized emergency vehicle has passed ...

In applying this statute, the Court first pointed out that Anderson had admitted hearing the siren just after proceeding into the intersection. Because he had then continued to drive instead of immediately stopping, the Court concluded that Anderson had breached his duty to yield to the emergency vehicle.

Section 55–8–132, however, was not the only basis upon which the Court held that Anderson's conduct was the sole proximate cause of the accident. The Court also invoked Tenn.Code Ann. § 55–8–140(2), which provides as follows:

> LEFT TURNS ON TWO–WAY ROADWAYS. At any intersection where traffic is permitted to move in both directions on each roadway entering the intersection, an approach for a left turn shall be made in that portion of the right half of the roadway nearest the center line thereof and by passing to the right of such center line where it enters the intersection, and after entering the intersection the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered. Whenever practicable, the left turn shall be made in that portion of the intersection to the left of the center of the intersection.

After reviewing photographs of the intersection and Anderson's trial testimony, the Court found that Anderson had not executed a ninety (90) degree turn as mandated by the statute; rather, it found that the turn was actually closer to forty five (45) degrees. This diagonal turn, the Court reasoned, had the effect of concealing Anderson behind the first cars in the eastbound lanes of Kingston Pike, thereby greatly reducing the parties' ability to see one another. The Court concluded that Anderson's action constituted a breach of his duty under § 55–8–140(2) and proximately caused the accident.

After a thorough review of the record, we must respectfully disagree with the analysis set forth by the Court of Appeals, particularly its application of § 55–8–108. This holding, which was based on the fact that the officer had activated her warning signals and was proceeding at a reasonable rate of speed, is an overly mechanical and literalistic interpretation of the statute: it ignores the crucial context in which the accident occurred. We, like the trial court, find the fact that this intersection was well known to police as one of the most dangerous in the Knoxville area, coupled with very heavy congestion at the time of the accident, to be of paramount importance in assessing the reasonableness of parties' conduct. We are also persuaded by the trial court's observation that although Officer Matlock obviously knew that the light she was approaching was red, and realized that someone would have a green light to enter the intersection, she nevertheless chose to cross the center line and proceed in the westbound lane of traffic, thereby preventing motorists entering the intersection from the south from seeing her. In short, with all deference to the Court of Appeals, we believe there is ample evidence in the record to support the trial court's holding that the conduct of Officer Matlock was negligent under the circumstances of this case. Therefore, we reverse the judgment of the Court of Appeals in that regard.

Although we agree with the trial court's judgment regarding the presence of negligence on the part of both parties, we cannot agree with the specific percentages of fault that it allocated to the parties. In its memorandum opinion, the trial court referred repeatedly to the emergency vehicle operator's "high degree of responsibility" to avoid injuring the public. While these operators clearly have a statutory duty to exercise due care in the course of emergency runs, see § 55–8–108(d), this duty is equal to that imposed upon the average motorist to exercise due care in operating their automobile. In light of the equivalence of the parties' respective duties, we find that the allocation of seventy-five percent (75%) of the fault to Officer

Matlock is unwarranted. Brian Anderson did in fact breach his statutory duty to yield to an emergency vehicle. Also, Anderson's failure to execute the left turn in accordance with the dictates of § 55-8-140(2) certainly contributed greatly to the accident. Although this statute is hardly a model of clarity, it is obvious that the statute imposes upon motorists the duty to execute left turns as close to the center lines of the respective roadways as possible in order to maximize visibility. Had Anderson not pursued such a diagonal path, but instead driven more toward the center of the intersection, the parties' visibility would have been greatly increased. The collision might have been avoided; or, at the very least, the impact lessened.

Although it is true that the trier of fact has considerable latitude in allocating percentages of fault to negligent parties, *see e.g., Martin v. Bussart,* 292 Minn. 29, 193 N.W.2d 134 (1971), appellate courts may alter those findings if they are clearly erroneous. Because this case was tried without a jury, our review of the issues of fact is *de novo* on the record of the trial court. However, we must presume that the trial court's findings were correct unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 27-3-103; Tenn.R.App.P. 13(d). Because the record clearly demonstrates, and the foregoing discussion shows, that the majority of the fault for this accident lay with Brian Anderson, we accordingly modify the judgment of the trial court and assign seventy five percent (75%) of the fault to Anderson and twenty-five percent (25%) to Officer Matlock. This cause is hereby remanded to the trial court for the execution of this judgment.

ANDERSON, C.J., and REID, BIRCH and WHITE, JJ., concur.