ALICE LIVINGSTON, as parent and
next friend of DAVID JONATHAN
LIVINGSTON, a minor, and DAVID
JONATHAN LIVINGSTON individually,

      Plaintiffs/Appellees,

VS.

UPPER CUMBERLAND HUMAN
RESOURCE AGENCY,

      Defendant/Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Appeal No.
01-A-01-9609-CV-00391

DeKalb Circuit
No. 6971

**FILED**

**March 12, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE


APPEALED FROM THE CIRCUIT COURT OF DEKALB COUNTY
AT SMITHVILLE, TENNESSEE

THE HONORABLE JOHN A. TURNBULL, JUDGE



JERRY LEE BURGESS
Courthouse Square
One South Jefferson Street
Cookeville, Tennessee 38501
      Attorney for Plaintiffs/Appellees

J. RUSSELL FARRAR
WILLIAM N. BATES
211 Seventh Avenue No., Suite 320
Nashville, Tennessee 37219-1823
      Attorney for Defendant/Appellant




AFFIRMED AND REMANDED




BEN H. CANTRELL, JUDGE




CONCUR:
TODD, P.J., M.S.
LEWIS, J.

# O P I N I O N

The issues in this case, brought under the Tennessee Governmental Tort Liability Act, include the trial judge's allocation of fault and the award of damages. We affirm.

## I.

David Jonathan Livingston, a thirteen year old boy attending a church retreat, was injured on the premises of the Upper Cumberland Human Resource Agency (UCHR). Walking barefoot at dusk in a grassy area near a gravel road, Mr. Livingston stepped into an eight inch clay pipe that had been sunk into the ground approximately eighteen inches to provide access to a water valve. The jagged edges of the pipe near the ground surface lacerated Mr. Livingston's leg just below the knee. The wound did not heal properly and ultimately required surgery to reposition a leg muscle, and a skin graft to cover the area.

After a bench trial before the Circuit Court of DeKalb County, the trial judge found UCHR's negligence caused ninety-five percent of the injury and Mr. Livingston's negligence five percent. The court awarded damages in the following specific amounts:

1. $15,000 for pain and suffering up to the date of the trial;
2. $15,000 for future pain and suffering;
3. $40,000 for permanent impairment and disfigurement.
4. $17,500 for the loss of past enjoyment of life; and
5. $40,000 for the loss of future enjoyment of life.

## II.

## Comparative Fault

With respect to the allocation of fault, the trial judge found that by leaving this open hole and allowing grass to grow up and cover it, the defendant created a virtual trap in an area where it should have foreseen that people might be playing night or day. He also found that if Mr. Livingston had had a flashlight it would not have helped him to see the dangerous condition.

The appellant does not argue that the evidence preponderates against these particular findings, see Rule 13(d), Tenn. R. App. Proc., but the appellant does argue that Mr. Livingston was more than five percent at fault because he was in an area where he should not have been walking at night and he was not paying attention to the ground in front of him.

Mr. Livingston testified that he had been to the dining hall and was walking back to his bunk area with some snacks in his hands. It was almost dark but some security lights and light from the sky illuminated the area. He was barefooted, and the gravel on the road hurt his feet, so he walked in the grass to the left side of the narrow roadway. He was with some other boys and was not paying particular attention to where he was going.

The allocation of fault by the court in a non-jury case is presumed to be correct unless the preponderance of the evidence is otherwise. *Wright v. City of Knoxville*, 898 S.W.2d 177 (Tenn. 1995). We have examined the record in this case and we think the trial judge's findings were correct. Therefore, we affirm the allocation of fault.

### III.

**Damages**

The appellant does not dispute the trial court's award for past and future pain and suffering. The appellant does, however, take issue with the court's award of $57,500 for past and future loss of enjoyment of life. Loss of enjoyment of life is one of the intangible elements of damages, along with pain, suffering, and inconvenience. *Martin v. Southern Railway*, 463 S.W.2d 745 (Tenn. App. 1971); see also *Dixie Feed & Seed Co. v. Byrd*, 376 S.W.2d 765 (Tenn. 1963).

The proof showed that Mr. Livingston was an excellent athlete prior to the accident. He played baseball, basketball, football, and enjoyed scuba diving with his father. After the accident and the subsequent skin graft, he gave up baseball and football altogether because he feared that sliding into base or a blow to his leg would "mess it up." There is a dispute in the record about whether he has permanently given up contact sports, but it is clear that he no longer excels in these activities. He now runs track in high school, but he has gone from being one of the fastest runners to being "behind everybody" in the 400 meter competition. When he runs for a long period of time his leg tightens up and starts to burn. Sometimes his ankle swells after periods of physical activity.

In addition to giving Mr. Livingston an impairment rating of fifteen percent to the body as a whole, the surgeon who performed the skin graft said that in his opinion the area of the wound would remain susceptible to trauma. As a result, Mr. Livingston should wear a pad, or a wrap over the area if he engages in contact sports. Because of the tendency of the ankle to swell, Mr. Livingston should wear an elastic wrap if he is going to be on his feet for long periods of time. We do not think the evidence preponderates against the trial judge's finding of $57,500 for the past and future loss of enjoyment of life.

The appellant also argues that an award to Mr. Livingston of $40,000 for permanent impairment and disfigurement plus an award for pain and suffering and the loss of enjoyment of life awards him a double recovery. Although the appellant does not cite any authority supporting that argument, we can see how the separate categories can be easily confused. But they are different. As the Court said in *Thompson v. National Railroad Passenger Corp.*, 621 F.2d 814 (6th Cir. 1980):

> [C]onceptually, these categories of intangible damages are distinct . . . [p]ain and suffering, permanent injury, and loss of enjoyment of life each represent separate losses which the victim incurs. Permanent impairment compensates the victim for the fact of being permanently injured whether or not it causes any pain or inconvenience; pain and suffering compensates the victim for the physical and mental discomfort caused by the injury; and loss of enjoyment of life compensates the victim for the limitations on the person's life created by the injury.

621 F.2d at 824.

Part of the confusion, no doubt, results from the fact that the same elements are factors to be considered in different categories. For instance, permanent physical impairment is a category all its own, but it also affects the injured party's ability to do the things he or she likes to do. Hence, it is a factor in the loss of enjoyment of life. Likewise, pain and suffering may be the cause of the permanent impairment because doing normal things causes too much pain.

The permanent impairment, however, need not result from pain. It may be that the injury damaged the nerves or muscles so that the body simply does not function as well as it did. In that case, the injured party has a permanent impairment and no doubt, will suffer a loss of the enjoyment of life -- separate and apart from the pain caused by the trauma. Such is the case here. Mr. Livingston lost the use of a muscle in his leg that had to be moved over to cover the bone in the area of the laceration. His physical ability has been impaired and he cannot do the things he once enjoyed did well. He also will suffer some pain in the future, but the pain is

associated with nerve growth and the healing process, not with ordinary physical activity.

The trier of fact must take care not to duplicate an award when considering the intangible elements of damages associated with personal injuries. We do not find that the trial judge did so here.

As to the amount awarded for the permanent injury and disfigurement, we do not think the evidence preponderates against the trial judge's finding.

The judgment of the trial court is affirmed and the cause is remanded to the Circuit Court of DeKalb County for any further proceedings necessary. Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL, JUDGE


CONCUR:


_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION


_____
SAMUEL L. LEWIS, JUDGE