IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 1, 2001 Session

## IN RE: ESTATE OF MARTHA M. WOODARD

**Appeal from the General Sessions Court for Washington County**
**No. P35-252-98     Robert G. Lincoln, Judge**

#### FILED MARCH 26, 2001

#### No. E2000-02219-COA-R3-CV

---

This declaratory judgment action focuses on a dispute among three adult children concerning the ownership of certain funds in their mother's estate. In earlier litigation relating to the administration of the estate of the children's father, a chancellor found the same funds had been owned by the children's parents as tenants by the entireties and directed that the funds be transferred out of the father's estate, and "deposited to [the mother's] account." The children's mother died approximately four months after the entry of the chancellor's order. At the time of her death, the funds were still in the father's estate due to the fact that the executrix of his estate, who was also the mother's attorney-in-fact, had failed to transfer the funds into her mother's name. The mother's will made several specific bequests, including a bequest, to the petitioner in the instant case, of "all of [sic] money deposited in the First Tennessee Bank." The petitioner filed this suit seeking a declaration that the funds should be treated as constructively having been placed in the mother's checking account at First Tennessee Bank. The trial court granted such relief, and the respondents, the other two children, now appeal. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court**
**Reversed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

Rick J. Bearfield, Johnson City, Tennessee, for the appellants, Diana M. Agett and William Bryan Woodard, Jr.

Jerry W. Laughlin, Greeneville, Tennessee, for the appellee, Martha Woodard Braden.

### OPINION

I.

This suit involves a dispute among Martha Woodard Braden ("Braden"), Diana M. Agett ("Agett"), and William Bryan Woodard, Jr. ("Woodard"), the adult children of the late William Bryan Woodard ("Father") and the late Martha M. Woodard ("Mother").

In July, 1993, Father and Mother sold their Sullivan County condominium, which had been owned by them as tenants by the entireties, for $90,000. The proceeds from the sale were deposited in an account in Father's name alone. When Father died in October, 1993, the proceeds were still in his individual name.

Following Father's death, Agett was acting not only as the executrix of her father's estate, but also as Mother's attorney-in-fact pursuant to a power of attorney dated October 16, 1992. During the administration of Father's estate, Braden, the petitioner herein, raised several questions in the Sullivan County Chancery Court before the Honorable Richard E. Ladd – one being whether the proceeds from the sale of the condominium passed by operation of law to Mother upon Father's death or whether the funds passed through Father's estate. On April 9, 1997, Chancellor Ladd found that the proceeds of $80,126.10 should be treated as having passed to Mother automatically upon Father's death, stating as follows:

> The proceeds of the sale of the condominium which was owned by [Father] and [Mother] as tenants by the entireties maintain their character as an asset held by the entireties and passed to [Mother] on the death of [Father]. The amount realized from the reinvestment of the proceeds from this sale, together with all dividends and interest earned thereon, shall be transferred from the Estate account and deposited to [Mother's] account.

At the time of the hearing before Chancellor Ladd, the subject proceeds were in a certificate of deposit ("the CD") at First Tennessee Bank. The CD was in the name of Father's estate. It bore interest at the rate of 5.06%. Although Mother maintained at least one investment account with a stockbroker, her only bank account at the time of the chancellor's order was a checking account at First Tennessee Bank. That account was then earning interest at the rate of 1.53%.

It is important to again note that at the time Chancellor Ladd entered his order, Agett was serving both as executrix of Father's estate and as Mother's attorney-in-fact. Agett consulted with the estate's attorney concerning the best place to invest the funds on behalf of her mother. As the CD did not mature until June 9, 1997, the funds could not be withdrawn without penalty before that date. Upon maturation of the CD, Agett had ten days within which to withdraw the funds without penalty. During this ten-day window, however, Agett was caring for her mother, who was experiencing significant health problems. Rather than withdrawing the funds, Agett simply renewed the CD. She stated at trial that she did not withdraw the funds from the CD and deposit them into

Mother's existing checking account at First Tennessee Bank because of the difference in the interest rates being earned by these two investment vehicles.

The CD next matured on August 8, 1997. Agett again had ten days within which to withdraw the funds without penalty. However, before the expiration of the ten-day period, on August 15, 1997, Mother died. The proceeds from the sale of the condominium were still in Father's estate at the time of Mother's death.

Mother's will made specific bequests to each of her three children. To Braden, Mother bequeathed, *inter alia*, "all of [sic] money deposited in the First Tennessee Bank." Her will left the residuary of her estate to Father, who, as previously indicated, predeceased her. The will did not address the distribution of the residuary in the event Father was not living at the time of Mother's death. Both Braden and Agett learned of the contents of Mother's will shortly after their father died in 1993.

Agett and Woodard were designated by Mother's will to administer her estate. Braden filed the instant petition after learning that Agett had failed to transfer the condominium sale proceeds following Chancellor Ladd's decision. The petition alleges that the proceeds, which had subsequently been deposited in a First Tennessee Bank account in the name of Mother's estate, should be deemed to have been placed in Mother's checking account at First Tennessee Bank prior to her death, and should thus pass under the specific bequest to Braden, rather than as a part of the residuary of Mother's estate in which the three children will share equally. At the time of the hearing below, the condominium sale proceeds, with accumulated interest, amounted to $86,606.34.

After a hearing on the matter, the trial court in the instant case stated that "[t]he Court's of the opinion [that Agett] knew what transferring that amount of money to [Mother's] account [would] do to her inheritance." The court then found for Braden and held that the condominium sale proceeds in the amount of $86,606.34 should be treated as constructively having been placed in Mother's checking account at First Tennessee Bank. Agett and Woodard now appeal.

II.

In this non-jury case, our review is *de novo* upon the record, with a presumption of correctness as to the trial court's factual determinations, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law, however, are accorded no such presumption. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn. 1993).

III.

The appellants, Agett and Woodard, argue that the trial court erred (1) because Chancellor Ladd's order does not specifically require that the proceeds be deposited into the checking account

at First Tennessee Bank; and (2) because that order did not set forth a specific time for performance and Agett's delay in complying with the order, and ultimately her failure to transfer the funds before Mother's death, were due to a prudent exercise of her authority as Mother's attorney-in-fact. The appellants assert that the proceeds should be distributed equally among the three children pursuant to the residuary clause of Mother's will.

Braden counters (1) that the evidence does not preponderate against the trial court's finding that Chancellor Ladd's order obligated Agett to place the condominium sale proceeds into Mother's checking account at First Tennessee Bank; and (2) that Agett's proffered reasons for not complying with Chancellor Ladd's order do not operate to relieve her of the obligation to comply with the order.

The threshold issue before the trial court in the instant action was the legal effect of Chancellor Ladd's order. We believe the trial court erred when it interpreted the order to mean that the transfer of the funds from Father's estate to "[Mother's] account" necessarily required Agett to deposit the funds at the first available opportunity into Mother's checking account at First Tennessee Bank.

Chancellor Ladd ordered that the proceeds were to "be transferred from the Estate account and deposited to Martha M. Woodward's [sic] account." In construing court orders, words are to be interpreted according to their ordinary and customary meaning and no strained interpretation should be entertained. *See* ***Myers v. Myers***, 891 S.W.2d 216, 219 (Tenn. Ct. App. 1994). Braden argues that the language of the order necessarily required Agett to deposit the condominium sale proceeds into Mother's existing checking account at First Tennessee Bank. She bases this conclusion primarily on two facts: (1) that Chancellor Ladd specifically referred to the checking account earlier in his order; and (2) that all of the parents' bank accounts had been at First Tennessee Bank.

It is true that the chancellor, before making his decree with respect to the condominium sale proceeds, mentioned in his order several First Tennessee Bank accounts, one of which was the subject checking account in Mother's name; but the chancellor referred to these accounts in the context of reciting a history of transactions and not as an integral part of his rationale leading to his decision that the funds should be treated as property owned by the entireties. We also acknowledge that the evidence shows that all of the Woodards' bank accounts had been at First Tennessee Bank. We do not believe that these two facts necessarily indicate that Chancellor Ladd meant to order Agett to transfer the condominium sale proceeds out of a certificate of deposit earning 5.06% interest into Mother's existing checking account at First Tennessee Bank bearing 1.53% interest. In fact, the chancellor's order does not require Agett to transfer the funds into an account at any particular institution or into any other particular investment vehicle. His order generally refers to "Martha M. Woodward's [sic] account."[1]

_____

[1] It is possible that the chancellor was simply directing that the sales proceeds be placed in Mother's name, *i.e.*, "to [her] account."

-4-

The only real issue before the chancellor concerning the condominium sale proceeds was whether the proceeds represented property owned by the entireties at the time of Father's death. If they did, they passed by operation of law to Mother upon Father's death. If they did not, they would pass through Father's estate. Thus, as far as the issues on appeal are concerned, it was the characterization of the proceeds that was the sole issue before the chancellor and not the investment vehicle or specific account into which they should be deposited.

Additionally, it is of the utmost importance to recognize that Agett was serving dual roles with respect to the proceeds. Not only was she under an obligation to transfer the proceeds from Father's estate to Mother in compliance with the chancellor's order, she was also burdened with a fiduciary duty to Mother. As Mother's attorney-in-fact, Agett was statutorily required to use her best judgment when acting on behalf of Mother. *See* T.C.A. § 34-6-109 (1996). Chancellor Ladd's order did not mandate compliance within any certain time period, and Agett could not have withdrawn the funds, penalty-free, prior to June 9, 1997. Agett consulted an attorney regarding the most appropriate location for the condominium sale proceeds. When the CD first matured after the chancellor's order, Agett, as Mother's attorney-in-fact, could have placed the proceeds in Mother's low-interest bearing checking account at First Tennessee Bank or she could, as she did, continue to maintain them in a certificate of deposit at a higher rate of interest. In either event, the funds would have been protected by federal insurance.

The real issue in this case is not whether Agett should have placed the funds in an account that would ultimately be inherited by Braden. The issue is not even whether Agett intentionally favored her brother and herself by not timely transferring the funds to Mother's checking account at First Tennessee Bank. It must be remembered that Mother was still alive at the time of the chancellor's order. Therefore, the only real issue before us is *whether Agett acted in a way that was consistent with the best interest of her mother*. Just as a living person, generally speaking, is under no obligation to fund a testamentary bequest during his or her life, so also a living person's attorney-in-fact is not obligated to fund such a bequest if the latter, exercising sound judgment, determines that it is not in the living person's best interest to do so. In the instant case, the evidence clearly preponderates in favor of a finding that, by leaving the funds where they were, Agett did not act in a manner contrary to her mother's best interest. Acting in her mother's best interest was her only obligation; she was under no obligation to act in the best interest of her sister.

In sum, because the only issue before the chancellor was whether Mother received the property as the survivor of a tenancy by the entirety – was Mother entitled to the property, and not what account the funds should go into – we are unwilling to attach a great deal of significance and give an expansive interpretation to the chancellor's very general language of "deposited to [Mother's] account." Moreover, leaving the proceeds in the higher-interest bearing CD rather than transferring them to the lower-interest bearing checking account at First Tennessee was in keeping with Mother's best interest. The fact that Agett's decision ultimately inured to her benefit and the benefit of her brother at the expense of their sister is of no legal significance.

Accordingly, we hold that the trial court erred in treating the condominium sale proceeds as constructively having been placed in Mother's checking account at First Tennessee. The proceeds should be considered part of the residual estate.[2]

## IV.

The judgment of the trial court is reversed. This case is remanded for the entry of a judgment consistent with this opinion and for collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed to the appellee.

_____
CHARLES D. SUSANO, JR., JUDGE

---

[2] In her will, Mother left her residual estate to Father, who failed to survive her. Thus, the condominium proceeds will be distributed according to Tennessee's anti-lapse statute, T.C.A. § 32-3-105(a) (Supp. 2000), which provides, in pertinent part, as follows:

> Whenever the devisee or legatee…dies before the testator…leaving issue which survives the testator, the issue shall take the estate or interest devised or bequeathed which the devisee or legatee…would have taken, had that person survived the testator, unless a different disposition thereof is made or required by the will.

As previously indicated in this opinion, Mother's will does not provide for the disposition of the residuary in the event Father predeceased her. Therefore, under the anti-lapse statute, the residuary passes to Father's issue, *i.e.*, the three children who are the combatants in this litigation.