IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 16, 2002 Session

## BRUCE KELLY MARTIN v. BEVERLY JOYCE MARTIN

**Appeal from the Chancery Court for Benton County**
**No. 00-211     Ron E. Harmon, Chancellor**

———————————

**No. W2002-00819-COA-R3-CV - Filed May 15, 2003**

———————————

This is a divorce case. Prior to their marriage, the husband and the wife executed a prenuptial agreement. The agreement stated that upon divorce, if jointly-held property were sold, each party would be credited his or her share of separate property contributed to the purchase of the jointly-held property, with the remaining funds divided according to each party's ownership share. After the parties married, they purchased land with the intention of converting it into a catfish farm. The husband and the wife both contributed financially towards the purchase of the land. Both parties worked full time. The husband used his machinery that he owned separately and expended labor to convert the land to a catfish farm. The wife maintained their home. The parties divorced. At the divorce hearing, the husband argued that, under the terms of the prenuptial agreement, he should be credited for his labor and the use of his heavy machinery to improve the farm land. The trial court declined to do so, and credited the husband and the wife with their respective financial contributions. The parties' personal property was divided equally. The husband appeals, arguing that he should have been credited for his labor and the use of his heavy machinery, and also disputing the division of the personal property. The wife asserts that she should have received a larger percentage of the proceeds from the sale of the property. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Ricky L. Wood, Parsons, Tennessee, for appellant, Bruce Kelly Martin.

Larry J. Logan, McKenzie, Tennessee, for appellee, Beverly Joyce Martin.

**OPINION**

Bruce Kelly Martin ("Husband") and Beverly Joyce Martin ("Wife") were married on April 5, 1997. Prior to their marriage, the parties executed a prenuptial agreement ("Agreement"). The Agreement defined "property"[1] and "separate property,"[2] and stated that each party had "sole ownership and control of his or her Separate Property presently owned or hereinafter acquired . . . ." Upon divorce, the Agreement provided that:

> All joint property will be divided so that each party receives one-half of the property or proceeds, if owned in equal share, or receive the appropriate ownership share, if owned differently. If any party has contributed to the jointly held property with his or her Separate Property, he or she shall be credited with the value of that property before the Joint Property, or the proceeds thereof, are divided.

Thus, under the Agreement, each party would first receive credit for his or her contribution of separate property to any jointly-held property, and then any remaining proceeds would be divided in half or according to each party's percentage of ownership.

After their marriage, the parties paid $145,000 for approximately 200 acres of land with the intention of converting the land into a catfish farm ("Farm"). Using funds that were separate property, the parties each contributed approximately fifty percent towards the purchase of the land. After the farm was purchased, Husband bought a mobile home with separate funds and had it installed on the land, had water lines and a water meter installed, had a survey conducted, and had culverts placed on the land. Husband and Wife both worked full time. Husband used heavy machinery that he owned separately and contributed his labor to begin converting the land to a catfish farm. Wife maintained their home, and supported Husband in his efforts to establish the catfish farm.

On January 5, 2001, Husband filed for divorce. He asserted that the parties' property should be divided according to the terms of the Agreement. Wife contended, inter alia, that the property should be divided equitably.

A hearing was held on November 16, 2001. Husband argued that, in determining each party's share in the Farm, he should receive credit for the labor he invested in the Farm and for the use of his heavy machinery to improve the Farm. Husband testified that he used his D-6 Caterpillar bulldozer on the Farm for 1,292 hours, and he estimated the value of the use of the bulldozer and his labor at $80 per hour, for a total of $103,360. He also estimated that he worked 1,280 hours at $25

---

[1] "The term 'Property' shall be defined in the Agreement as all property, rights or interests in property, real, personal or mixed, tangible or intangible, including any income, appreciation, accretion, proceeds, rights and benefits relating thereto."

[2] "The term 'Separate Property' shall be defined in this Agreement as 'Property' in which only one of the parties has an ownership interest or rights, except such as would be created by the marriage but for this Agreement."

per hour constructing a shop on the Farm, for a total of $32,000; 384 hours of tractor and dirt pan work at $100 per hour, for a total of $38,400; and various labor on a mobile home on the property at $8,260. Thus, Husband argued that he should receive a credit of over $182,000 for the contribution of his labor and the use of his heavy machinery.

Husband also testified that from 1997 to 2000 he invested $38,046.85 in supplies to build the shop. He spent $22,923.24 for the parties' mobile home and water lines, water meter, septic system, gravel for the driveway, culverts, and underpinnings for the mobile home. He expended $13,717.31 for paid labor and general Farm improvements. Finally, Husband asserted that he invested $97,154.02 in monetary contributions to the Farm.[3] In total, Husband contended that he invested $353,861.42 into the Farm.

On cross examination, Husband acknowledged that there was a savings account used for Farm expenses. The account had $5,296.57 in it when Husband closed the account. Husband said that he took the money in the savings account to help make up for past farming losses. Husband also acknowledged that he permitted a friend to farm a portion of the Farm at no charge, so long as the friend kept the vegetation from "growing up."

Kenneth Dreaden ("Dreaden"), a real estate appraiser, testified regarding the value of the Farm. Dreaden appraised it approximately six months prior to the hearing. At that time, Dreaden valued the Farm at $233,700. Thus, Husband valued his separate contribution to the Farm at over $100,000 more than its appraised value.

Wife testified about her contribution as well. She said that she used $32,902.52 from an inheritance to pay down another piece of property owned by Husband. She also contributed $40,000 cash towards the purchase of the Farm. She did not know how much money Husband contributed towards the Farm, and she acknowledged that Husband paid all of their bills while they were married. She prepared meals for Husband, washed his clothes, and supported him in establishing the Farm. Wife asserted that Husband would not have been able to accomplish as much as he did had she not done her part to support him.

At the conclusion of the hearing, the trial court ordered that the farm property be sold. The trial judge found that Wife contributed $73,000 towards the purchase of the Farm, and concluded that Husband paid the balance of the $145,000 purchase price. After adding in Husband's expenditures for the survey, mobile home and installation of utilities, and materials used to construct the shop, the judge found that Husband contributed $132,775 towards the value of the property from

---

[3]This amount was calculated after taking into consideration a note taken out on the Farm, a note taken out on another property, Husband's actual payments towards the indebtedness, and Wife's contribution to the down payment on the Farm.

his separate funds.[4]  Then, utilizing the appraisal value of the Farm, the trial court evenly divided the remaining value of the Farm, and ultimately awarded Husband sixty-six percent of the proceeds from the sale of the Farm and Wife thirty-four percent of the proceeds.[5]

The trial judge declined to give Husband credit for the contribution of his labor or for the use of his heavy machinery, explaining:

> . . . . [T]he Court finds further that neither party in these findings . . . is given credit for labor; however, there is a little question in the Court's mind that the contribution of the equipment owned by [H]usband prior to the marriage was used to enhance this property; it was just that the enhancement of the property is so nebulous, the Court is unable to place a value on that.

Thus, the trial court determined that, under the Agreement, neither party would receive credit for labor, and that the proof was too speculative to value the enhancement of the Farm due to Husband's use of his heavy equipment.

The trial judge evenly divided the parties' personal property acquired during the marriage. Regarding the $5,296.57 in the Farm checking account, the trial judge found that it was not an asset to be divided, but rather that "it was going back into the property." Similarly, the trial court found that the division of marital property would not be affected by Husband permitting his friend to farm a portion of the property at no charge, since the property was improved by having row crops rather than bushes and overgrowth. The trial court reduced its oral ruling into a written order on March 14, 2002. From this order, Husband appeals.

On appeal, Husband argues that the trial court should have given him credit for his labor and the use of his equipment when it determined his ownership percentage in the Farm. He also contends that the trial court improperly divided the parties' personal property. Wife asserts that the Husband's monetary contributions were less than the trial court determined them to be, and that the percentage of sale proceeds he receives should therefore be lowered. She argues that his percentage of the value of the Farm should be further reduced by the money he took from the Farm savings account and the value of the land Husband allowed his friend to farm. In sum, Husband argues that the trial court incorrectly interpreted "separate property" under the Agreement's provision regarding division of jointly-held property, and Wife asserts that the trial court erred in determining Husband's monetary contribution.

---

[4] Apparently the trial court gave Husband credit for $73,000 towards the purchase of the Farm. The trial judge then added $37,000 for materials to build the shop, $3,355 for a survey, $1,184 for culverts, $2,736 for a water line, $500 for a water meter, and $15,000 for the mobile home, for a total of $132,775.

[5] In lieu of the property division ordered by the trial court, the trial judge also granted Husband the option of buying Wife's portion of the Farm for $75,000.

Because this case was heard by the trial court sitting without a jury, the trial court's findings of fact are reviewed *de novo* upon the record with a presumption of correctness, unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995). The interpretation of a prenuptial agreement is a question of law, which is reviewed *de novo* with no presumption of correctness. *See Sharp Sherrill v. Sherrill*, 1992 Tenn. App. LEXIS 463, at *5 (Tenn. Ct. App. May 22, 1992) (citations omitted).

Husband first argues that the trial court should have awarded him a larger percentage of the proceeds from the sale of the Farm. His trial testimony indicates that he estimated his labor, the use of his machinery, and his actual expenses at $353,861.42. He asserts that this is his contribution of "separate property" to the Farm that should be used to determine his percentage of ownership in the Farm. Thus, compared to Wife's contribution of approximately $73,000, Husband claims that he should receive approximately eighty-three percent of the proceeds from the sale of the Farm, and Wife should receive seventeen percent. Conversely, Wife argues that Husband's contribution was $97,154.02,[6] which should then be reduced by $6,473.20 for Husband's half of the funds removed from the joint bank account and the rental value of the portion of the Farm used by Husband's friend at no charge. Thus, Wife argues that Husband should receive approximately fifty-five percent of the proceeds from the sale of the Farm, and that she should receive forty-five percent.

Under Tennessee law, prenuptial agreements may be enforced when certain criteria are satisfied. *Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996); *see* Tenn. Code Ann. § 36-3-501 (2001).[7] Indeed, there is no assertion here that the prenuptial agreement should not be enforced; rather the parties disagree as to its application. The parties' prenuptial agreement provides that, to divide jointly-held property, each party will first be credited with the value of his or her contribution of separate property before the remainder is distributed. Husband asserts that the trial court erred by implicitly interpreting this provision as referring only to monetary contributions, and not including his labor and the use of his machinery as additional separate property contributed toward the jointly-held Farm.

---

[6]Husband stated that he took a note out to cover part of his portion of payment for the Farm. He made $35,000 in payments on the Farm to cover the notes. He testified that his total contribution to the purchase of the Farm was $97,154.02. The trial judge discerned that a portion of the $97,154.02 included interest paid by Husband.

[7]Section 36-3-501 of the Tennessee Code Annotated provides:

Notwithstanding any other provision of law to the contrary, except as provided in § 36-3-502 [regarding creditors' rights], any antenuptial or prenuptial agreement entered into by spouses concerning property owned by either spouse before the marriage which is the subject of such agreement shall be binding upon any court having jurisdiction over such spouses and/or such agreement if such agreement is determined, in the discretion of such court, to have been entered into by such spouses freely, knowledgeably and in good faith and without exertion of duress or undue influence upon either spouse. The terms of such agreement shall be enforceable by all remedies available for enforcement of contract terms.

Tenn. Code Ann. § 36-3-501 (2001).

The prenuptial agreement in this case defines "Property" as "property, rights or interests in property, real, personal or mixed, tangible or intangible . . . ." Separate property is defined in the Agreement as "Property" in which "only one of the parties has an ownership interest or rights . . . ." This provision simply does not include the value of the labor of either Husband, in his work to improve the Farm, or of Wife, in tending to the household to enable Husband to labor on the Farm. Likewise, it does not include Husband's use of his heavy equipment on the Farm. We find no error in the trial court's interpretation of the Agreement as not including the parties' labor or the use of Husband's equipment. The trial court found that Husband's monetary contribution towards the Farm from his separate property amounted to $132,775 and that Wife's contribution of separate property totaled $73,000. The evidence does not preponderate against this determination. We also find no error in the trial court's determination regarding the disposition of the savings account funds and the use of the Farm by Husband's friend.

Husband argues next that the trial court erred in dividing the personal property equally. The trial court determined that the personal property was purchased during the marriage using income earned during the marriage, and that consequently it was marital property to be divided equally. After a review of the record, we find no error in this decision.

Finally, Wife seeks her reasonable attorney's fees for this appeal. This request is denied.

The decision of the trial court is affirmed consistent with this Opinion. Costs are taxed to appellant, Bruce Kelly Martin, and his surety, for which execution may issue, if necessary.

_____
HOLLY KIRBY LILLARD, JUDGE

-6-