IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 9, 2004 Session

## OPAL J. BROCK v. MEIGS COUNTY, TENNESSEE

**Direct Appeal from the Circuit Court for Meigs County**
**No. 3402     Hon. Russell E. Simmons, Jr., Circuit Judge**

---

### No. E2003-02114-COA-R3-CV - FILED SEPTEMBER 10, 2004

---

Plaintiff sustained injuries from a fall in the court house and sued the County for maintaining a dangerous stairway.  Following trial, the Court entered a Judgment for defendant. We affirm.


**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**


HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.


W. Holt Smith, Madisonville, Tennessee, and Randy G. Rogers, Athens, Tennessee, for Appellants.

Michael E.. Evans and Terri L. Bernal, Nashville, Tennessee, for Appellee.



### OPINION

In this action plaintiff sued defendant for injuries resulting from a fall on April 26, 2001 in the Meigs County Courthouse.  In her Complaint, she essentially alleged that a stairway in the courthouse was maintained in a dangerous and unsafe condition, in that the stair treads were not properly secured.  Plaintiff further alleged defendant failed to place proper handrails for the stairs, and as a result of the dangerous conditions she fell and sustained serious injuries.

The County joined issue on plaintiff's allegations and the case was tried before the Circuit Judge.  At trial, plaintiff testified that the steps on the stairway were wrinkled at the bottom and there was no handrail. She testified that she was going down the steps slowly, and in her own words: "I got to that third step, I went to step down on this second step, my feet was there on that

second step right there and that mat did not wrinkle up, it did not go flat, it flipped over with me and I reached for a railing and there was no railing there and I went down. I hit the floor."

The defendant offered testimony of several people working in the courthouse. One witness testified that she saw plaintiff falling toward the door and went out to help her sit up against the door, and that plaintiff told her that when she came off the steps she heard something pop, and she took another step and fell. Another witness testified that she heard the noise in the hallway and observed plaintiff had fallen near the front door and she quoted plaintiff as saying when she stepped down she heard a pop and fell.

The County Trustee testified that she heard plaintiff moaning and went to the hallway and when asked did she hear the plaintiff say anything about what happened, she responded "The best I can remember is she said that after she stepped off the steps and started to walk, her leg gave way." Another witness, the administrative assistant to the County Executive, testified that when she came to the hallway she found the plaintiff at the outside door of the courthouse, and plaintiff related that when she stepped off the lower step she heard her ankle pop.

Following trial, the Trial Court filed a Memorandum Opinion and found that the stairway "constituted a dangerous condition" and that defendant "had actual knowledge of the dangerous condition prior to plaintiff's fall". The Court, after reviewing the conflicting evidence as to how plaintiff fell, essentially rejected plaintiff's version of the fall and said the plaintiff had failed to prove that the condition of the rubber treads and the stairway had anything to do with her fall and resulting injury.

Plaintiff has appealed, and her issue for review by this Court is "Did the Trial Court err in failing to consider the clear, concrete and convincing evidence from the treating doctor, that Mrs. Brock's injury was caused by a fall on Meigs County's defective stairway, as opposed to merely stepping onto a level surface?"

In this non-jury case, our review is *de novo* upon the record of the proceedings below, but the record comes to us with a presumption of correctness as to the Trial Court's factual determinations, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995). In reviewing the Trial Court's findings of fact, we take into account that the Trial Court was in the best position to assess credibility of witnesses, and his determination of credibility is entitled to great weight on appeal. *Massingale v. Massingale*, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995).

Plaintiff argues where there is clear, concrete and convincing evidence, contrary to oral testimony on which the Trial Court relied, that evidence is a basis to reverse the Trial Court's findings as to credibility, *citing: Airline Construction v. Barr*, 807 S.W.2d 247 (Tenn. Ct. App. 1990). The plaintiff relies on the testimony of Dr. Walter King to establish such clear, concrete and convincing evidence, contrary to the Trial Court's findings. Plaintiff bases her argument on the doctors' testimony that her ankle injury could not have occurred by merely stepping down on a flat

surface, and that she had to have some other physiological force applied to her ankle to cause the severity of her injury.

An opinion of an expert must be based upon facts, proved or assumed and assumed facts not supported by evidence will not supply substantial facts necessary to support the expert opinion. *Parker v. Prince*, 656 S.W.2d 391 (Tenn. Ct. App. 1993). Dr. King testified:

> Q.      . . . I want you to assume that on April 26, 2001 Mrs. Brock was descending the stairs at the Meigs County court house and slipped on a rubber tread because it was loose, reached for a handrail, lost her balance and fell forward. Assuming that those fact are true, is the avulsion fracture you saw in Mrs. Brock consistent with that history?
>
> A.      Yes, sir.

On cross-examination, Dr. King testified that plaintiff had "eight times the risk of a healthy person the same age having a fracture. So she's basically set up to get hurt like that". Dr. King was asked:

> Q.      Dr. King, can a popping noise accompany a breakage or a fracture?
>
> A.      It can, yes.
>
> Q.      And according to your history, Mrs. Brock reported to you that she heard a popping noise before she lost her balance; correct?
>
> A.      As far as I could tell that's the way she reported it to me.

The other orthopedic surgeon opined that plaintiff's type of injury was caused by "super physiologic force", and he described physiologic force as things you normally do "meaning as opposed to 'super' meaning more than usual". The physicians described Mrs. Brock's pre-existing conditions as being "morbidly obese" and having "uncontrolled diabetes". While the plaintiff's testimony as to how she fell, if taken as true, supports the opinions of physicians, however, the Trial Court as a matter of fact rejected the plaintiff's testimony as to how she fell, and impliedly found that the force of plaintiff's step on the floor resulted in the fracture which caused her fall. The evidence which the Trial Court found credible, is that plaintiff fell after she descended the steps, when she heard a popping sound before she fell.

The medical testimony establishes that plaintiff was much more likely to sustain a fracture from any activity, vis a vis a normally healthy person, which is consistent with the Trial Court's finding.

The evidence does not preponderate against the Trial Court's findings of fact as to

the way and manner in which the plaintiff fell.  Tenn. R. App. P. 13(d).  When the trier of fact from all of the evidence determines facts contrary to the facts posited as a basis for an expert opinion, the expert opinion at that juncture has no probative value.  *Parker.*  Here, the Trial Court rejected plaintiff's version of how the accident occurred and the evidence does not preponderate against the Trial Court's findings.  Tenn. R. App. P. 13(d).

We affirm the Judgment of the Trial Court and remand, and assess the cost of the appeal to Opal J. Brock.

_____
HERSCHEL PICKENS FRANKS, P.J.