IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 20, 2004 Session

## GREG DAVIDSON, ET AL. v. BANK OF FRIENDSHIP, INC.
## AND
## THEODA DUNN v. BANK OF FRIENDSHIP, INC.

Direct Appeal from the Chancery Court for Henderson County
No. 14850 and 14854      Ron E. Harmon, Chancellor

---

No. W2003-01887-COA-R3-CV - Filed November 5, 2004

---

The trial court awarded judgment to Plaintiffs upon determining that the Bank of Friendship could not foreclose on Plaintiffs' properties because the Bank had failed to apply proceeds from a sale under a deed of trust to a senior deed of trust. We reverse and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

David A. Riddick, Jackson, Tennessee, for the appellant, Bank of Friendship, Inc.

Carthel L. Smith, Lexington, Tennessee, for the appellees, Greg Davidson and Kim Davidson.

Danny R. Ellis, Jackson, Tennessee, for the appellee, Theoda Dunn.

**OPINION**

This dispute concerns lots in the West Pointe subdivision in Henderson County. Plaintiffs/Appellees Greg Davidson (Mr. Davidson) and Kim Davidson (Ms. Davidson and, collectively, "the Davidsons") and Theoda Dunn (Ms. Dunn) purchased the lots at auction in August 1999. The lots were part of a larger parcel owned by Blankenship/Melton Real Estate, Inc. ("Blankenship/Melton"). The parcel was divided into approximately 26 lots and on May 20, 1999, Blankenship/Melton pledged them to the Bank of Lexington (a branch of the Bank of Friendship,

hereinafter "the Bank") as collateral for a $295,000 loan. The loan was secured by a recorded deed of trust.

On August 7, 1999, Delta Auction auctioned the property at the request of Blankenship/Melton. At the time of the auction, the loan was not in default. At auction, Ms. Dunn purchased lots 103 and 110; the Davidsons purchased lots 104, 105 and 391 Parker Circle. Ms. Dunn and the Davidsons (hereinafter, collectively, "Plaintiffs") paid a deposit to Delta Auction and the remainder of the purchase price to Blankenship/Melton. Ms. Dunn paid $18,900 to Blankenship/Melton and the Davidsons paid $32,250 to Blankenship/Melton. Plaintiffs did not have title searches prepared on the properties. The warranty deeds conveying the properties from Blankenship/Melton to Plaintiffs do not declare that the properties were encumbered by the mortgage. Following the auction, Blankenship/Melton, in turn, paid $227,300 on the $295,000 note to the Bank, leaving a balance of approximately $60,000.

After the auction, the Bank released the majority of the lots which comprised the original parcel. As of June 2002, approximately eight lots still remained on the deed of trust. Lots 86 and 87 of the parcel were purchased by Larry Steve Melton. The Bank released lot 86 from the deed of trust on March 28, 2000, but did not formally release lot 87. Larry Steve Melton then pledged lots 86 and 87 as collateral for a loan of approximately $184,000 ("the Melton loan"). Thus, lot 87 was encumbered by the original deed of trust ("the senior mortgage") and the Melton loan, and lot 86 was encumbered by the Melton loan. Larry Steve Melton defaulted upon this loan and the Bank foreclosed on the property. The two lots were purchased at foreclosure by the Bank for $120,000. The Bank applied these proceeds to the Melton loan.

In March 2001, Plaintiffs received notice that the Bank was foreclosing on their lots under the deed of trust. In April 2001, Plaintiffs filed complaints for declaratory judgment in the Chancery Court of Henderson County seeking quiet title and a judgment declaring the lien invalid. In their complaints, Plaintiffs assert the Bank agreed to the 1999 auction sale as an alternative to foreclosure. Plaintiffs also moved the court to temporarily enjoin the Bank from foreclosing on their properties. The trial court granted their motion pending further orders of the court.

The trial court entered final judgment for Plaintiffs on September 29, 2003. The trial court determined that, as a matter of law, the Bank could not foreclose on Plaintiffs' properties because the Bank should have applied the proceeds from the foreclosure sale of lots 86 and 87 to satisfy the senior mortgage held by the Bank on the same property. The trial court held the Bank had no further lien on the lots owned by Plaintiffs. The trial court further awarded Plaintiffs' attorneys' fees. The Bank filed a timely notice of appeal to this Court.

### *Issues Presented*

The dispositive issues presented by this appeal, as we perceive them, are:

(1)     Whether the trial court erred by holding that, as a matter of law, the Bank could not foreclose on Plaintiffs' properties because the Bank should have satisfied the senior mortgage with proceeds of the foreclosure sale of lots 86 and 87 where lot 87 remained encumbered by the senior mortgage in addition to the Melton loan.

(2)     Whether the Bank waived its right to foreclosure by agreeing to the auction sale in lieu of foreclosure and by agreeing to release the liens created by the senior mortgage.

(3)     Whether the trial court erred in awarding Plaintiffs' attorneys' fees.

### *Standard of Review*

Our standard of review of a trial court sitting without a jury is *de novo* upon the record. *See Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995). We presume the trial court's findings of fact to be correct unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). Thus, we may not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. We review the trial court's conclusions on matters of law *de novo*, with no presumption of correctness. Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

### *Analysis*

We first turn to the trial court's determination that, as a matter of law, the Bank should have applied the proceeds of the foreclosure sale of lots 86 and 87 under the Melton loan (hereinafter, alternatively, "the junior mortgage") to the balance due on the senior mortgage, thereby extinguishing the mortgage liens on Plaintiffs' properties. As an initial matter, we note that when the Bank foreclosed on lots 86 and 87, it did so under the junior mortgage.[1] We additionally note that the amount due under the Melton loan was approximately $184,000, that the Bank itself purchased the property for $120,000, and that the Circuit Court of Henderson County awarded the Bank a judgment against Larry Steve Melton for the deficiency. Plaintiffs argue, and the trial court apparently determined, that these amounts should have been applied to the senior mortgage. This determination was in error as a matter of law.

Generally, the foreclosure of a junior mortgage does not affect the rights of a senior mortgage holder where the prior mortgagee is not made a party to the action and is not provided for in the foreclosure decree. 59A C.J.S. *Mortgages* § 961 (1998). Although, as a general rule, the surplus generated from foreclosure of a prior lien may be paid to the junior lien holder, the reverse is not

---

[1] We note that the Bank had released the original lien on lot 86 and apparently believed the lien on lot 87 also had been released. Thus, foreclosure could only have proceeded under the junior mortgage and not, as Plaintiffs suggest, under the original deed of trust.

true. *Id.* Thus, a purchaser under a foreclosure sale takes subject to the senior mortgages. *Id.* Further, in general, where a lender holds more than one mortgage on a property, forecloses under a junior mortgage, advertises that the property is offered subject to prior mortgages, and purchases the property itself, any surplus reverts to the mortgagor. *Bolerjack v. Fid. Sav. & Loan Ass'n,* Rutherford Equity App. No. 88-217-II, 1988 WL 126839, at *8 (Tenn. Ct. App. Nov. 30, 1988) *no perm. app. filed* (discussing *Spalding v. Quincy Trust Co.*, 49 N.E.2d 251 (Mass. 1943)). Any surplus is not applied to the senior mortgages under such facts. *Id.*

In the present case, the Bank foreclosed on lot 86 and 87 under the deed of trust pursuant to the Melton loan. This was the Bank's only lien on lot 86, which had been released from the original deed of trust, and was a junior mortgage on lot 87. Moreover, the foreclosure sale did not generate the full amount of the Melton loan. Thus, no surplus resulted which *could* have been applied to the senior mortgage. The record is silent as to whether the Bank advertised lots 86 and 87 as free of encumbrances when it foreclosed on the property, but we believe that is not relevant to the claims of Plaintiffs here. Thus, the Bank's lien on Plaintiffs' properties was not extinguished by the foreclosure sale of lots 86 and 87.

We next turn to Plaintiffs' argument that the Bank waived its lien when it agreed to the 1999 auction as an alternative to foreclosure under the deed of trust, and that the Bank agreed to release its lien on properties sold at the auction. Larry Steven Melton (Mr. Melton), an agent for Blankenship/Melton, testified that Mr. Benny Fesmire (Mr. Fesmire), a majority shareholder, senior vice president, and member of the board of the Bank, agreed that all property sold at the auction would be released from the deed of trust. Mr. Melton further testified that when he became aware that the Bank had not released Plaintiffs' properties he "made several trips to the bank and begged him [Mr. Fesmire] to release those people['s] property." Mr. Melton testified that Mr. Fesmire was "kind of wishy washy" in response and that "[o]ne day he'd say he was going to release them, you know, come Friday or Monday and then, one day he'd say 'just get us our money. Just worry about your money.'"

Mr. Davidson testified that there was no indication that the property was encumbered when it was auctioned. Mr. Davidson also testified that, after he received the foreclosure notice, he discussed the situation with Todd Henderson (Mr. Henderson), who was employed by the Bank in May 2000. Mr. Davidson stated that Mr. Henderson assured him the matter would "work itself out."

Ms. Dunn testified that, on the day of the auction, Jasper Jones (Mr. Jones) of Delta Auction told her that she would be "[guaranteed] a title" to the property. She additionally testified that Mr. Jones announced this guarantee at the auction. Ms. Dunn also testified that, when she became aware that the Bank was foreclosing on the Davidson's property, she telephoned the Bank to inquire whether her property was included in the foreclosure and that the Bank assured her it was not. Ms. Dunn testified that she then received a letter advising her that the Bank was foreclosing on the property. Ms. Dunn testified that she had no conversation with either Mr. Henderson or Mr. Fesmire.

The Bank, on the other hand, asserts that it had no formal agreement with Blankenship/Melton regarding when the lots would be released or sold. The Bank further asserts that, although it released some of the lots from the deed of trust, it retained enough real estate as collateral for the outstanding indebtedness. The Bank contends Plaintiffs' properties are included in the retained real estate. Additionally, the Bank submits that had Plaintiffs conducted a title search of the property, it would have revealed the recorded lien. The Bank asserts that Plaintiffs may have mistakenly relied upon statements made by Delta Auction and/or Blankenship/Melton that the lots were free of any liens. The Bank contends that Plaintiffs' properties were secured by the recorded deed of trust at all times relevant to this lawsuit and that Plaintiffs' cause of action for misrepresentation, if any, is against Blankenship/Melton and not against the Bank.

It is not disputed that Mr. Fesmire attended the August 1999 auction, that he bought property at the auction, and that the Bank released this property from the deed of trust. The Bank also does not dispute that it released several, if not most, of the auctioned lots from the deed of trust. Further, the parties do not dispute that Blankeship/Melton conveyed the auctioned property to Plaintiffs by warranty deed, that the property was secured by the deed of trust at the time of the auction, that the original loan was not in default at the time of the auction, or that the entire indebtedness was not paid.

The disputed issues of fact, as we perceive them, are 1) whether the Bank agreed, orally or otherwise, to release all the property sold at auction from the deed of trust and 2) whether the Bank waived its lien by acquiescing to an alleged announcement by Delta Auction at the 1999 auction that the property was offered free and clear of any lien or encumbrance.

The trial court made no findings concerning these issues. Additionally, the brochure advertising the auction is silent regarding whether the property was offered free of any lien. It offers only "owner financing at bank rates." Further, because it held that the Bank could not assert its lien as a matter of law, the trial court did not address the issue of waiver in its judgment. Accordingly, we remand to the trial court for further proceedings on this issue.

We turn next to the question of whether an award of attorneys' fees was appropriate in this case. In light of our holding in this matter, the award of attorneys' fees is reversed. We decline to address whether an award of attorneys' fees would be appropriate upon disposition on remand as advisory.

### *Holding*

In light of the foregoing, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion. Costs of this appeal are taxed equally to Appellees, Greg Davidson, Kim Davidson, and Theoda Dunn, and Appellant, the Bank of Friendship, Inc., and its surety, for which execution may issue if necessary.

-5-

_____
DAVID R. FARMER, JUDGE