IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 17, 2003 Session

## IN RE: M.L.J. And R.R.J., ET AL. v. JOHNNIE LOUISE JOHNSON, ET AL.

Direct Appeal from the Juvenile Court for Sequatchie County
No. 771622 and 771909   Howard Upchurch, Juvenile Court Judge Sitting by Interchange

---

No. M2002-02213-COA-R3-JV - Filed April 24, 2003

---

The Juvenile Court for Sequatchie County terminated respondents' parental rights.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court
Affirmed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY K. LILLARD, J., joined.

Christina Flury Sitz, Tracy City, Tennessee, for the appellant, Johnnie Louise Johnson.

Marshall A. Raines, Jr., Jasper, Tennessee, for the appellant, Lurie Johnson, Jr.

Paul G. Summers, Attorney General and Reporter and Elizabeth C. Driver, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

### OPINION

This appeal arises from the order of the Juvenile Court for Sequatchie County terminating the parental rights of Johnnie Louise Johnson ("mother") and Lurie Johnson, Jr. ("father;" collectively, "parents" or Johnsons).  In October 2000, MLJ and RRJ ("the children") were removed by the Department of Children's Services ("DCS" or "the State") following allegations of sexual abuse by their half-brother and uncles.  Prior to removing the children, DCS instituted a safety plan requiring parents to keep the children away from the perpetrators.  DCS also contracted with a foster care agency to provide in-home services to the family.  Parents failed to follow the safety plan, and the children continued to be exposed to the abusers.

DCS petitioned for and was awarded temporary custody of the children in October 2000. This was the third time DCS was granted temporary custody of these children as the result of neglect. Parents agreed to a permanency plan requiring them to:

(1) overcome denial of sexual abuse and disallow contact with the abusers;
(2) supply DCS with a safety plan to protect the children against the continued risk of harm;
(3) obtain psychological evaluations;
(4) participate in therapy;
(5) demonstrate stability for a period of at least six (6) months in concrete needs such as housing, finances and transportation;
(6) attend parenting classes;
(7) advise their care manager of changes in residence, telephone number, employment and marital and criminal status;
(8) pay $15.00 per week in child support;
(9) visit the children regularly and demonstrate appropriate parenting techniques;
(10) complete a parenting assessment and follow all recommendations.

Following a December 2000 hearing, the trial court found by clear and convincing evidence that the children were dependent and neglected; that emergency conditions existed such that there was no less drastic alternative to removal; that it was contrary to the children's best interest to be returned to the care, custody and control of their parents. The trial court accordingly ordered temporary custody to remain with the State. DCS filed a petition for termination of parental rights in September 2001. As grounds for termination, DCS stated removal for six months, substantial non-compliance with the permanency plan, persistence of conditions leading to removal, and the likelihood that the children could not be returned to their parents' care in the near future. The trial court ordered parents' rights terminated on April 19, 2002. Parents now appeal.

### *Issues for Review*

The issues before this Court on review, as we restate them, are:

(1)     Whether clear and convincing evidence supports termination of the Johnsons' parental rights;

(2)     Whether clear and convincing evidence establishes that termination of the Johnsons' parental rights is in the best interests of the children.

### *Standard of Review*

Our standard of review of a trial court sitting without a jury is *de novo* upon the record. *See Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995). There is a presumption of correctness as to the trial court's findings of fact, unless the preponderance of evidence is otherwise. Tenn. R. App. P. 13(d). However, no presumption of correctness attaches to a trial court's conclusions on issues of law. *Bowden v. Ward*, 275 S.W.3d 913, 916 (Tenn. 2000); Tenn. R. App. P. 13(d). Insofar as the trial court's determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent evidence of clear and convincing evidence to

the contrary. *See Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn.1999). The existence of any statutory basis for termination of parental rights will support the trial court's decision to terminate those rights. *In re C.W.W., N.W.W., Z.W.W., & A.L.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000)(*perm app. denied*). Thus we must affirm the trial court's judgment terminating the Johnsons' parental rights if it is supported by clear and convincing evidence.

### *Discussion*

Our analysis in a termination of parental rights action begins with the well-established premise that "[a] parent has a fundamental right to the care, custody and control of his or her child." *Stanley v. Illinois*, 405 U.S. 645, 651 (1972). Since this right is fundamental but not absolute, "[t]he federal and state constitutions require the opportunity for an individualized determination that a parent is either unfit or will cause substantial harm to his or her child before the fundamental right to the care and custody of the child can be taken away." *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999). A parent's right to the care, custody, and control of his or her child may be terminated if clear and convincing evidence justifies such termination under the applicable statutes. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982). In determining what constitutes clear and convincing evidence, this Court observed in *In re C.W.W., N.W.W., Z.W.W., & A.L.W.* :

> Although it does not require as much certainty as the "beyond a reasonable doubt" standard, the "clear and convincing evidence" standard is more exacting than the "preponderance of the evidence" standard. *O'Daniel v. Messier*, 905 S.W.2d 182, 188 (Tenn. App. 1995); *Brandon v. Wright*, 838 S.W.2d 532, 536 (Tenn. App. 1992). In order to be clear and convincing, the evidence must eliminate any serious or substantial doubt about the correctness of the conclusions to be drawn from the evidence. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992); *O'Daniel v. Messier*, 905 S.W.2d at 188. Such evidence should produce in the fact-finder's mind a firm belief or conviction as to the truth of the allegations sought to be established. *O'Daniel v. Messier*, 905 S.W.2d at 188; *Wiltcher v. Bradley*, 708 S.W.2d 407, 411 (Tenn. App. 1985). In contrast to the preponderance of the evidence standard, clear and convincing evidence should demonstrate that the truth of the facts asserted is "highly probable" as opposed to merely "more probable" than not. *Lettner v. Plummer*, 559 S.W.2d 785, 787 (Tenn. 1977); *Goldsmith v. Roberts*, 622 S.W.2d 438, 441 (Tenn. App. 1981); *Brandon v. Wright*, 838 S.W.2d at 536.

*In re C.W.W., N.W.W., Z.W.W., & A.L.W.*, 37 S.W.3d at 474.

Tennessee Code Annotated § 36-1-113 provides, in pertinent part:

> (g) Initiation of termination of parental or guardianship rights may be based upon any of the following grounds:

. . . .

(2) There has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan or a plan of care pursuant to the provisions of title 37, chapter 2, part 4;

(3)(A) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

(I) The conditions which led to the child's removal or other conditions which in all reasonable probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;

(ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and

(iii) The continuation of the parent and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

. . . .

(5) The parent or guardian has been sentenced to more than two (2) years' imprisonment for conduct against the child who is the subject of the petition, or for conduct against any sibling or half-sibling of the child or any other child residing temporarily or permanently in the home of such parent or guardian, which has been found under any prior order of a court or which is found by the court hearing the petition to be severe child abuse, as defined in § 37-102(b)(21).

Tenn. Code Ann. § 36-1-113(g)(2),(3),(5)(Supp. 2001). The Code also provides that once the court has found by clear and convincing evidence that the statutory criteria for termination have been met, the court additionally must find that termination of the parent's rights is in the child's best interests. Tenn. Code Ann. § 36-1-113(c)(2) (Supp.2001).

In its order terminating the Johnsons' parental rights, the trial court found the following by clear and convincing evidence:

1. That the petition filed by the State of Tennessee, Department of Children's Services, is well taken and should be sustained and relief granted thereunder for the causes as therein stated in that the subject children have been in the custody of Petitioner for at least six (6) months;

2. That the conditions which led to said children's removal still persist, that there is little likelihood that said conditions will be remedied at an early date so that the children can be returned to the parents in the near future; that the continuation of the legal parent and child relationship greatly diminishes the children's chances of early integration into a stable and permanent home as defined by T.C.A. § 36-1-113(g)(3)(A);

-4-

3. That the Respondents Lurie Johnson and Johnnie Johnson have failed to comply in a substantial manner on the reasonable responsibilities of the Permanency Plan pursuant to T.C.A. § 36-1-113(g)(2);

4. That the father, Lurie Johnson, has been convicted and sentenced for a period of two years or longer for a crime against a child or sibling pursuant to T.C.A. § 36-1-113(g)(5);

5. It is therefore, for the best interest of the said children and the public that all of the parental rights of the Respondents to the said children be forever terminated and that complete custody, control and guardianship of the said children should now be awarded to the State of Tennessee, Department of Children's Services with the right to place said [children] for adoption and to consent to any adoption in loco parentis.

Additionally, at the conclusion of the December 2001 hearing, the trial court emphasized:

Now I have, for the record, carefully scrutinized the Johnsons while they testified. I paid particular attention to the testimony, to the demeanor, and to the mannerisms while they were testifying. And I've also made it a point throughout these proceedings while listening to other witnesses to watch them in the courtroom. And I think all of that is important, particularly if this decision is reviewed. I can't describe — my vocabulary is too limited to describe the emphasis and weight that I am placing upon what I have seen out of the Johnsons in the courtroom today. And by that I don't mean to say that I've seen any aggravating actions or disrespect out of them, I just think that what I have observed here today goes hand-and-hand with much of the proof that I've heard today from some of the professionals and some disinterested individuals that have testified, and also from some of the reports that I've reviewed that have been introduced without objection.

It is undisputed that Mr. Johnson was convicted of sexual battery of his step-daughter from a prior marriage, for which he received a sentence of more than two years. It also is undisputed that the children at issue in this case have been sexually abused by Mr. Johnson's male relatives, that they have been in DCS custody at least three times, and they were in DCS custody for more than six months when DCS filed its petition for termination. Upon review of the record before us, we agree with the trial court that clear and convincing evidence establishes that the Johnsons are unable to care for their children due to mental limitations, that the conditions under which the children were removed from their parents' custody still exist, and that such conditions are unlikely to be remedied. We further find that although the Johnsons have made efforts to comply with the parenting plan, some essential elements, including the therapy/counseling requirement, have not been fulfilled. We also agree with the trial court that in light of the totality of the conditions present in this case, and in accordance with the considerations outlined in Tenn. Code Ann. § 36-1-113(I), termination of the Johnsons' parental rights is in the best interests of the children. The judgment of the trial court is affirmed.

*Conclusion*

This Court is not insensitive to the particular circumstances found in this case, nor to the efforts made by the Johnsons. However, upon review of the record, and giving deference to the trial court's assessment of the credibility of the witnesses, we agree that clear and convincing evidence supports termination of the Johnsons' parental rights. We also find clear and convincing evidence that such termination is in the best interests of the children. The judgment of the trial court accordingly is affirmed. Cost of this appeal are taxed to the appellants, Johnnie Louise Johnson and Lurie Johnson, Jr., and to their surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE