IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 18, 2004 Session

**IN RE: DMD & JLA**

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-03-0382-1 and CH-03-0383-1     Walter L. Evans, Chancellor**

---

**No. W2003-00987-COA-R3-PT - Filed June 17, 2004**

---

The trial court denied Appellants' petition for termination of Mother's parental rights and returned physical custody of children to Mother. We reverse and remand for determination of whether termination is in the best interests of the children. We vacate the order returning physical custody to Mother.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in part; Vacated in part; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID G. HAYES, SP. J., joined.

Melissa C. Berry, Memphis, Tennessee, for the appellants, Charlotte Diane Asbridge and Hugh Michael Asbridge.

Virginia M. Alexander, Memphis, Tennessee, for the appellee, Amy Michelle Darby (Asbridge).

**OPINION**

This is a termination of parental rights and child custody case. In February and April 2002, the Juvenile Court of Shelby County determined that the children in this case, DMD (born November 24, 1998) and JLA (born January 25, 2001), respectively, were dependent and neglected and without proper guardianship in that their mother, Amy Michelle Darby (Asbridge) ("Mother") was unfit and abused drugs. Hugh and Charlotte Asbridge (Asbridges), the children's paternal aunt and uncle, were granted temporary custody of the children. The children's father was incarcerated at the time. Mother did not appeal the custody determination. In February 2003, Asbridges filed a petition to terminate Mother's parental rights and to adopt DMD and JLA, then ages four and one.

The termination of parental rights matter was heard in late March and early April 2003 in the Chancery Court for Shelby County. The trial court denied the termination petition, and ordered

custody of the children returned to Mother following a transitional period. The trial court denied Asbridges' request that Mother's visitation be supervised in Tennessee during this transitional period. Accordingly, it denied the petition for adoption and entered an order for visitation. The trial court also denied Asbridges' motion to stay pending appeal.

Asbridges filed their notice of appeal and application for extraordinary relief to this Court on April 24, 2003. On April 25, 2003, we granted Asbridges' application and granted their motion to stay pending appeal. However, following Mother's response, this Court held the trial court did not err by denying the stay and lifted it accordingly.

### Issues Presented

Asbridges raise the following issues, as we restate them, for review by this Court:

(1) Whether the trial court erred in denying Asbridges' petition to terminate Mother's parental rights;

(2) Whether the trial court lacked subject matter jurisdiction to return physical custody of the children to Mother, where juvenile court retained exclusive jurisdiction over its prior order granting temporary custody to Asbridges.

### Standard of Review

Our standard of review of a trial court sitting without a jury is *de novo* upon the record. *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995). There is a presumption of correctness as to the trial court's findings of fact, unless the preponderance of evidence is otherwise. Tenn. R. App. P. 13(d). However, no presumption of correctness attaches to a trial court's conclusions on issues of law. *Bowden v. Ward*, 275 S.W.3d 913, 916 (Tenn. 2000); Tenn. R. App. P. 13(d).

Tennessee Code Annotated § 36-1-113 governs the termination of parental rights. The code provides, in pertinent part:

> (c) Termination of parental or guardianship rights must be based upon:
> (1) A finding by the court by clear and convincing evidence that the grounds for termination or parental or guardianship rights have been established; and
> (2) That termination of the parent's or guardian's rights is in the best interests of the child.

Tenn. Code Ann. § 36-1-113(c)(2001). This section also provides the grounds on which parental rights may be terminated. The existence of any statutory basis for termination of parental rights will support the trial court's decision to terminate those rights. *In re C.W.W., N.W.W., Z.W.W., & A.L.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000).

A court's determination to terminate parental rights must be supported by clear and convincing evidence. *Id.* at 474. The "clear and convincing evidence" standard is more exacting than the "preponderance of the evidence" standard, although it does not demand the certainty required by the "beyond a reasonable doubt" standard. *Id.* To be clear and convincing, the evidence must eliminate any substantial doubt and produce in the fact-finder's mind a firm conviction as to the truth. *Id.* Insofar as the trial court's determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent clear and convincing evidence to the contrary. *See Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn.1999).

### *Termination of Parental Rights*

Termination of parental rights requires a two-step analysis. First, the court must determine by clear and convincing evidence that statutory grounds exist to support termination. If such grounds are found, then the court must determine whether termination is in the best interest of the children. Tenn. Code Ann. § 36-1-113(c)(2)(Supp. 2001); *M.L.J. v. Johnson*, 121 S.W.3d 378, 381 (Tenn. Ct. App. 2003). In the case now before this Court, Asbridges argue that the trial court erred by failing to find that clear and convincing evidence supports termination of Mother's parental rights under Tennessee Code Annotated § 36-1-113(g)(1)-(3)(2001). They further assert that since grounds for termination exist, the trial court erred by failing to conduct a best interest analysis.

The code provides:

> (g) Initiation of termination of parental or guardianship rights may be based upon any of the following grounds:
> (1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred;
> (2) There has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan or a plan of care pursuant to the provisions of title 37, chapter 2, part 4;
> (3)(A) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
> (I) The conditions which led to the child's removal or other conditions which in all reasonable probability would cause the child to be subjected to further abuse or neglect and which, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;
> (ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and
> (iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

Tenn. Code Ann. § 36-1-113(g)(1)-(3)(2001).

We first consider Asbridges' argument that clear and convincing evidence establishes that Mother abandoned DMD and JLA. Under the code,

> "Abandonment" means, for purposes of terminating the parental or guardian rights of parent(s) or guardian(s) of a child to that child in order to make that child available for adoption, that:
>
> (i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child;

Tenn. Code Ann. § 36-1-102(1)(A)(i)(Supp. 2003).

The element of willfulness is central to our determination of failure to support or visit. *See In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999). This Court recently has noted that, "[f]ailure to support a child is 'willful' when a person is aware of his or her duty to support, has the capacity to provide the support, makes no attempt to provide support, and has no justifiable excuse for not providing the support." *In re Adoption of T.A.M.*, No. M2003-02247-COA-R3-PT, 2004 WL1085228, at *4 (Tenn. Ct. App. May 12, 2004). Willful failure to support does not occur where a parent is financially unable to provide support. *O'Daniel v. Messier*, 905 S.W.2d 182, 188 (Tenn. Ct. App.1995). However, a custodial parent's or third party's conduct does not excuse a biological parent's willful failure to support or visit unless that conduct actually prevents or significantly hinders the parent from doing so. *In re Adoption of T.A.M,* 2004 WL 1085228, at *4. Further, interference with a parent's attempts at visitation does not excuse the parent from his obligation to support the child financially. *Id.*

The trial court in this case found Mother had not financially supported DMD or JLA while they were in the Asbridges' custody with the exception of two payments, one of $69 and one of $60, made after termination proceedings had begun. The court further found, however, that Mother had no means or income to provide support for the children, and that she did not know that she had an obligation to support them. The trial court found that Mother did not voluntarily relinquish custody of the children; that she did not fail to attempt to reestablish contact with the children; that she did not abandon them. The court concluded that there is no proof that Mother is unfit or that substantial harm will result if Mother's rights are not terminated.

Upon review of the record, we find that it is undisputed that Mother neither financially supported nor visited DMD or JLA while they were in the custody of the Asbridges, except for the two payments made after the Asbridges had initiated termination proceedings. We must determine whether the preponderance of the evidence supports the trial court's findings that Mother was unable to provide financial support, that she did not know she had an obligation of support; that she did not fail to attempt to maintain contact with the children. The critical inquiry here is whether Mother's

failure to support or visit was willful; whether clear and convincing evidence supports a finding of abandonment.[1]

Mother met the children's father, Martin Asbridge (Father), in 1998, when she was 16 and he was in his early 40's. Father is the biological father of DMD and the adoptive father of JLA. Father was a drug abuser when he met Mother, and Mother testified that he introduced her to illegal drugs. Father and Mother had an on-and-off relationship for several years, and married in January 2001. In April 2001, Father began serving a five-year sentence on charges of manufacturing crystal methamphetamine.

During this time, Mother also had a relationship with KG. Mother testified that for about three years her relationship with Father and KG was "ongoing between the two of them." All three used illegal drugs, and KG was physically abusive to Mother while the children were present. Mother testified that KG was arrested in December of 2001, before Asbridges were awarded custody of DMD, and that she has not seem him since. She further testified that she has not abused illegal drugs since DMD was placed in Asbridges' custody in February 2002.

Mother testified that she maintained telephone contact with DMD from February 2002 until the Asbridges were awarded custody of JLA in April 2002. She testified that she decided not continue to telephone following an argument with Asbridges because it was upsetting to DMD. She testified that she did not receive notice of the custody hearing regarding JLA, but also testified that, in the meantime, she has moved with "Julio" and notice may have been sent to her prior known address. At the time of the hearing, Mother was working as a waitress and pregnant with a third child.

Mother testified that in 2002, her income was $2,843. She further testified that she did not send any portion of her income to Asbridges to support the children and that she did not send the children gifts for Christmas or their birthdays. Mother also testified that, at the time, she did not know she had an obligation to support the children once they had been placed in Asbridges' custody, and that she did not buy gifts because she was pregnant and had no income. Mother testified that no agency had contacted her regarding available services and that no permanency plan had been put in place. She also testified that she had been depressed and "down-and-out," but that, at the time of the hearing, she was in a stable home and committed relationship with "Ceasar," and was willing to attend parenting classes and do whatever was necessary to regain custody of the children.

We are not insensitive to Mother's financial difficulties, and mere poverty is not grounds for termination of parental rights. However, it is undisputed that Mother made absolutely no attempt to maintain a relationship with DMD and JLA for nearly a year. In addition to making no attempt

---

[1]We review the trial court's specific findings of fact de novo, presuming each specific finding to be correct unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). Then we must determine whether the facts as found by the trial court or as supported by the preponderance of the evidence clearly and convincingly establish grounds for termination of parental rights. *In re Adoption of T.A.M.*, No. M2003-02247-COA-R3-PT, 2004 WL1085228, at *3 (Tenn. Ct. App. May 12, 2004)

to provide even minimal financial support, it is undisputed that Mother failed to visit, telephone, send small gifts or cards, or in anyway maintain contact with these children. Further, although Mother testified to one unpleasant telephone conversation with Asbridges, this conversation does not support a determination that Mother was prevented or significantly hindered from visiting or maintaining contact with her children.

The clear and convincing evidence in this case is that Mother not only failed to provide even minimal financial support, but willfully failed to visit, contact, or in any way fulfill parental duties toward DMD and JLA for nearly a year. The evidence further establishes that she was neither prevented nor significantly hindered from doing so by Asbridges. Thus, under Tennessee Code Annotated § 36-1-113(g)(1), Mother abandoned these children and grounds exist for termination of her parental rights. We accordingly remand this cause for a determination of whether termination of Mother's parental rights is in the best interest of the children.

### *Custody*

We next consider whether, upon denying Asbridges' petition for termination of Mother's parental rights and adoption, filed as one petition, the trial court properly returned physical custody of DMD and JLA to Mother. Asbridges assert that, upon denial of their petition to terminate parental rights, subject matter jurisdiction over issues of custody reverted to juvenile court, which retained continuing exclusive subject matter jurisdiction over its prior custody order. Mother, however, submits that, under Tennessee Code Annotated § 37-1-103, upon the filing of the petition for adoption in chancery court, subject matter jurisdiction over the entire matter was transferred to chancery court. We agree with Asbridges that subject matter jurisdiction over the custody determination reverted to juvenile court upon denial of the termination petition.

Section 37-1-103 of the Tennessee Code provides, in pertinent part:

> (c) When jurisdiction has been acquired under the provisions of this part, such jurisdiction shall continue until the case has been dismissed, or until the custody determination is transferred to another juvenile, circuit, chancery or general sessions court exercising domestic relations jurisdiction, or until a petition for adoption is filed regarding the child in question *as set out in § 36-1-116(f)*. However, the juvenile court shall retain jurisdiction to the extent needed to complete any reviews or permanency hearings for children in foster care as may be mandated by federal or state law. This provision does not establish concurrent jurisdiction for any other court to hear juvenile cases, but merely permits courts exercising domestic relations jurisdiction to make custody determinations in accordance with this part. Notwithstanding any other law to the contrary, transfers under this provision shall be at the sole discretion of the juvenile court and in accordance with § 37-1-112. In all other cases, jurisdiction shall continue until a person reaches the age of eighteen (18), except that the court may extend jurisdiction for the limited purposes set out in § 37-1-102(b)(4)(B) until the person reaches the age of nineteen (19).

Tenn. Code Ann. § 37-1-103(c)(2001)(emphasis added).

Mother contends that the phrase "or until a petition for adoption is filed regarding the child in question as set out in § 36-1-116(f)" stands for the proposition that once any petition for adoption is filed, jurisdiction over the entire matter automatically is transferred. We disagree.

Section 36-1-116(f) is found within the portion of the chapter regarding adoption proceedings. It provides:

> (f)(1) Upon the filing of the petition, the court shall have exclusive jurisdiction of all matters pertaining to the child, including the establishment of paternity of a child pursuant to chapter 2, part 3 of this title, except for allegations of delinquency, unruliness or truancy of the child pursuant to title 37; provided, that, unless a party has filed an intervening petition to an existing adoption petition concerning a child who is in the physical custody of the original petitioners, the court shall have no jurisdiction to issue any orders granting custody or guardianship of the child to the petitioners or to the intervening petitioners or granting an adoption of the child to the petitioners or to the intervening petitioners unless the petition affirmatively states, and the court finds in its order, that the petitioners have physical custody of the child at the time of the filing of the petition, entry of the order of guardianship, or entry of the order of adoption or unless the petitioners otherwise meet the requirements of § 36-1-111(d)(6).

Tenn. Code Ann. § 36-1-116(f)(2001).

This section must be read in context with the entire statutory scheme governing termination or surrender of parental rights and adoption. The petition referred to in section 36-1-116(f) is the petition for adoption. Further, this petition must state, *inter alia*, that there has been full compliance with the law regarding surrender of the child or termination of parental rights, or that the petitioner intends to effect compliance with requirements for termination of parental rights as part of the adoption proceeding. Tenn. Code Ann. § 36-1-116(b)(11)(2001). Thus, the adoption petition is predicated upon the surrender or termination of the biological parents' rights. When a petition to adopt is filed concurrently with the petition to terminate rights, the termination of parental rights determination necessarily precedes consideration of the adoption matter.

When a petition for termination of parental rights is filed in a court with concurrent jurisdiction, the exclusive jurisdiction of juvenile court is superceded. Tenn. Code Ann. § 36-1-113(a). Under section 36-1-113(m), upon termination of parental rights, the court granting the termination petition also may place the child with prospective adoptive parents. However, if the court denies the termination petition, it has no option but to dismiss the adoption petition. Thus, its authority over the matter ends.

The denial of the termination petition, moreover, does not alter the prior custody order issued by juvenile court. *In re Valentine*, 79 S.W.3d 539, 550 (Tenn. 2002). Upon denial of the petition, jurisdiction reverts to the juvenile court that entered the order upon finding the children dependent and neglected. *State v. R.S. and K.S.*, No. M2002-00919-COA-R3-CV, 2003 WL 22098035, at * 19 (Tenn. Ct. App. Sept. 11, 2003) (*no perm. app. filed*).

Under section 36-1-113(a), prospective adoptive parents may file a termination of parental rights petition together with an adoption petition. Thus, a court with concurrent jurisdiction may consider both the termination and adoption aspects of the petition. However, in view of the foregoing, we cannot agree with Mother that the mere filing of the adoption petition along with the termination petition automatically transfers the entire custody matter from juvenile court when those petitions are denied. In this case, had chancery court granted the termination petition, it would have had jurisdiction to consider the adoption petition. However, once chancery court denied and dismissed the termination petition, the adoption issue was rendered moot and the court had no alternative but to deny and dismiss the petition. Its authority ended here. Absent an order from juvenile court transferring the matter, jurisdiction over the prior custody order reverted to the juvenile court which issued it.

### *Holding*

We find statutory grounds exist for termination of Mother's parental rights based on abandonment. We accordingly remand to the trial court for determination of whether termination of Mother's parental rights is in the best interest of the children. We further hold that when the chancery court denied the termination petition, jurisdiction over the prior, unappealed custody order reverted to the juvenile court which issued it. Accordingly, we vacate the order of chancery court returning physical custody to mother. Costs of this appeal are taxed to Amy Michelle Darby (Asbridge).

_____
DAVID R. FARMER, JUDGE