IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 4, 2021

## IN RE KAYDEN A.,[1] ET AL.

**Appeal from the Juvenile Court for Shelby County**
**No. DD7440          Harold W. Horne, Special Judge**

_____

### No. W2020-00650-COA-R3-PT
_____

Mother, who physically abused two of her children and pled guilty to an eight-year sentence for attempted aggravated child abuse, appeals the termination of her parental rights. We affirm the grounds for termination as well as the trial court's best interest finding.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which ANDY D. BENNETT, J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Larry Williams, Memphis, Tennessee, for the appellant, Karen Rene A.

Herbert H. Slatery, III, Attorney General & Reporter, and Amber L. Seymour, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

Mary McGinnis, Memphis, Tennessee, guardian ad litem.

## OPINION

### I. BACKGROUND

The plaintiff, Karen Rene A. ("Mother") is the mother of Kayden, Kameron, and Kaleia, born in February 2013, July 2014, and October 2015, respectively. All three children were born in Shelby County, Tennessee.

_____

[1]This court has a policy of protecting the identity of the children in parental rights termination cases by using initials for the last names of the parties.

On February 2, 2017, the Department of Children's Services ("DCS") received allegations of physical abuse regarding Mother's children. Kayden and Kameron had bite marks, burns, and bruises from being whipped by Mother. The two boys, along with Kaleia and half sibling Kamiya S., were adjudged dependent and neglected due to the alleged physical abuse by Mother. Temporary legal custody of Kamiya S. was transferred to her father, DeCarlos S.; temporary legal custody of Kayden, Kameron,[2] and Kaleia[3] was transferred to DCS. At a preliminary hearing held on March 2, 2017, Mother voluntarily waived her right to a hearing. She was awarded supervised visitation.

Upon a permanency plan[4] being created, Mother's tasks were to exercise visitation with the children, complete a parenting assessment and follow all recommendations, complete an alcohol and drug assessment and follow all recommendations, submit to random drug screens, participate in family violence classes, maintain stable housing and income, and provide financial support. At an April 13, 2017, permanency hearing, Mother was found in partial compliance with the plan because of her participation in a parenting assessment with HealthConnect along with her engagement in an alcohol and drug assessment and family violence classes with Camelot; Mother also visited with the children, obtained stable housing, and submitted to random drug screens.

The parenting assessment Mother completed recommended individual and family therapy, home parenting classes with Innovative, and compliance with DCS's recommendations. Mother began the home parenting classes, but failed to initiate individual counseling. Mother told Emily Parker, her family services worker ("FSW") that "she didn't feel like her mind was in the right place," that "it was a lot to take care of all of the kids," and that she needed additional assistance. As a result, DCS referred her to Alliance Health Care for services, but FSW never received confirmation that Mother attended.

Further, on March 30, 2017, Mother tested positive for marijuana and oxycodone. When requested to perform additional tests, Mother admitted to "using" and asked for more time to clean out her system. She also acknowledged alcohol use. FSW requested hair follicle tests, but Mother refused to comply.

Mother lived with her sister at times, although she often moved from house to house. She acknowledged at trial that she never obtained stable housing. Mother visited with the children every other week and maintained contact with DCS.

---

[2]Eldridge S. is the putative father of the two boys.

[3]Kaleia's putative father is Kenneth W.

[4]The family services worker noted that when the second and third permanency plans were created, Mother was incarcerated and did not participate.

From May 20, 2017, through September 20, 2017, despite claiming to work at Burger King and Staffline and having no expenses other than a cell phone bill of $45-50 per month, Mother failed to regularly pay child support; during one visit, she offered to give money directly to the foster parents and at another visit, she provided gifts to the children. The record reveals that foster mother was more comfortable with the money being paid directly to DCS; Mother, however, never reached out to DCS about paying support. On September 21, 2017, Mother was arrested on a charge of aggravated child abuse.

On November 6, 2017, all of the children were adjudicated dependent and neglected based upon the physical abuse of Kayden and Kameron. Additionally, the court found that the boys were victims of severe abuse. Legal custody of Kayden, Kameron, and Kaleia remained with DCS and permanent guardianship of Kamiya was awarded to her father.[5] The court further ordered that the children shall not visit Mother while she was incarcerated. DCS was relieved of its obligation to make reasonable efforts to reunify Mother with the children.

On January 9, 2018, Mother pled guilty to one count of attempted aggravated child abuse and was sentenced to eight years in prison at 30% release eligibility. A year later, on January 22, 2019, DCS filed a petition for termination of Mother's parental rights.

The trial was heard on January 30, 2020. The court heard testimony from Mother and FSW. Mother was still incarcerated pursuant to her eight-year sentence during trial. She did not know when she would be released, although her next scheduled parole hearing was set for December 2020. Mother testified that the month of trial, she began services while incarcerated—including anger management, parenting skills, victim and group therapy, and behavior and relapse prevention.

Despite not seeing the children in two years, Mother expressed a desire to be a part of the children's lives moving forward and hopes to regain custody of them. According to FSW, the children had not recently asked about Mother, and Mother had not contacted DCS to check on them. While incarcerated, Mother never sent any notes or gifts to the children. FSW claimed that Mother had no relationship with the Children.

According to FSW, the children were doing well and progressing in foster care. FSW testified that the children were not in a pre-adoptive home, as it was difficult to keep three children together. She observed that the strongest bond the children have is with each other. FSW testified Kayden and Kameron have both shown behavioral aggressive tendencies (hitting, throwing, pushing, stealing, failing to follow directions, and being disruptive) and developmental delays (Kayden—severe language and communication delays with unspecific disruptive impulse and conduct disorder) (Kameron—language

_____

[5]The termination petition at issue did not seek to terminate Mother's rights to Kamiya.

disorder, a speech-sound disorder, and ADHD) while in foster care. It was recommended that both boys engage in multiple forms of therapy and receive one-on-one instruction at school. Kayden had been prescribed psychotropic medication and his behaviors were improving. FSW explained that the behaviors exhibited by the boys were not typical of children their ages but that she had observed similar behaviors from abuse victims. When the boys were diagnosed by the Center of Excellence, the issues were attributed to a combination of developmental delays and early exposure to abuse and instability. As to Kaleia, she has progressed well, is no longer scared, and is more socialized.

The trial court orally provided as follows:

As to the mother, we have a clear and convincing finding that she has been found guilty of severe abuse but there has been an abandonment by her of the children and a lack of visitation for the past two years. That would go more to the best interest. . . . I cannot find the failure to visit in that four-month period on behalf of the mother. There is a willful failure to support by the mother. She was in all appearance without bills, had income and failed to provide []any meaningful support for the children.

Wanton disregard on behalf of the mother . . . . who is incarcerated at this time, in that the four months prior to the filing of this action [Mother] engaged in conduct that exhibited [a] wanton disregard for the welfare of the children. There has been noncompliance with the permanency plan . . . . The condition which led to the removal of the children still exists and is unlikely to be remedied in any meaningful time as far as these children are concerned.

There was a failure to manifest an ability or willingness to personally assume legal, physical custody or financial responsibility for the children . . . . The mother has stated the desire for adoption and a desire for her parental rights to remain in place, but her actions do not support a finding that she has made any meaningful attempt to remedy the situation which caused the children to be removed from her.

In terms of best interest, these children are subject to substantial severe abuse. The record indicates there were burns on their bodies. There were puncture wounds on their bodies. They had been bitten. They had been whipped and beaten, such as left bruises on their body and left a permanent mark on the children's psychological welfare and that the remedy for this is going to take years of therapy and close loving care for these children that the mother has demonstrated that she is unable to provide. The children have had no contact with their mother in over at least two years . . . . [T]he bond with the mother is harmful if it exists at all.

- 4 -

Again, the mother has not demonstrated a willingness or an ability to assume custody. Placing the children in her care would no doubt cause a substantial relapse in their mental issues which have led to their behavior and to developmental delays that are in existence.

* * *

In a comprehensive written order, the trial court provided the following:

**FINDINGS OF FACT**

II. Pursuant to Tennessee Code Annotated § 36-1-113(g)(1) and as defined by Tennessee Code Annotated § 36-1-102(1)(A)(iv); Respondent[] [Mother] abandoned the children in that [she was] incarcerated at the time of the petition to terminate parental rights . . . . [Mother] failed to contribute to the support of the children for four (4) consecutive months preceding her incarceration.

14. Pursuant to Tennessee Code Annotated § 36-1-113(g)(1) and as defined by Tennessee Code Annotated § 36-1-102(1)(A)(iv), Respondent[] [Mother] . . . engaged in conduct prior to [her] incarceration[ ] that exhibited a wanton disregard for the welfare of the children.

* * *

17. Pursuant to Tennessee Code Annotated § 36-1-113(g)(2), Respondent[] [Mother] failed to comply with the obligations and responsibilities outlined in the permanency plans, though the obligations and responsibilities were ratified by the Court as reasonable and related to the reasons necessitating foster care. . . .

* * *

21. Pursuant to Tennessee Code Annotated § 36-1-113(g)(3), Kayden, Kameron, and Kaleia have been in the custody of the State of Tennessee, Department of Children's Services for more than six (6) months preceding the filing of this petition, and the conditions which led to removal still persist and other conditions exist which in all probability would cause the children to be subjected to further abuse and neglect and which, therefore, prevent the children's safe return to the care of Respondent [Mother]. Further, there is little likelihood that these conditions will be remedied at an early date so that the children can be safely returned to Respondent in the near future; the continuation of the legal parent and child relationship greatly diminishes the

children's chances of early integration into a safe stable, and permanent home; and continuation of the legal parent and child relationship is not in the children's best interest. The Respondent has not made such a lasting adjustment as to enable the children to be returned to her safely.

22. [FSW] testified that the main barrier to the return of the children to [Mother] has become [Mother]'s incarceration and her lack of continuing relationship with the children. . . . [FSW] testified that Kaleia has no bond with her mother and that she does not remember her. [FSW] testified that Kameron used to ask about [Mother] but that he quit asking six or seven months ago.

23. Pursuant to Tennessee Code Annotated § 36-1-113(g)(4) and as defined in Tennessee Code Annotated § 37-1-102(b)(2[7]), Respondent [Mother] has committed severe child abuse against Kayden and Kameron, children, in that on November 6, 2017, the Juvenile Court found [Mother] to be a perpetrator of severe child abuse against these children. That order is *res judicata* on the issue of severe child abuse as it is a final order.

24. Pursuant to Tennessee Code Annotated § 36-1-113(g)(5), and as defined in Tennessee Code Annotated § 37-1-102(b)(2[7]), Respondent [Mother] has been sentenced to more than two (2) years' imprisonment for conduct that is severe child abuse against a child who is the subject of the petition, in that [Mother] pled guilty to one count of criminal attempt to commit aggravated child abuse. The facts underlying the criminal attempt charge were the same facts led to the severe abuse finding made by the Juvenile Court as to mother.

* * *

32. Pursuant to Tennessee Code Annotated § 36-1-113(g)(14), Respondent [Mother] has failed to manifest, by act or omission, an ability and willingness to assume legal and physical custody or financial responsibility of the minor children; and placing the children in the legal or physical custody of [Mother] would pose a risk of substantial harm to the physical or psychological welfare of the children. [FSW] testified that [Mother] has maintained that she wishes to resume parenting her children when she is released from jail. [FSW] testified that despite this firm position, [Mother] has taken almost no actions that would allow that to occur safely. [FSW] testified that [Mother] avoided drug screens prior to going to jail, that she has not completed the important tasks on the permanency plan, and that she has not availed herself of classes at the jail. . . .

33. Pursuant to Tennessee Code Annotated § 36-1-113(i)(1)-(9), termination

of parental rights is in the best interest of the children. Specifically, the court makes the following findings of fact that termination is in the children's best interest in regard to the mother . . . under the following factors set out in the statute:

a. Pursuant to Tennessee Code Annotated § 36-1-113(i)(1), [Mother] has not made an adjustment of circumstance, conduct, or conditions as to make it safe and in the children's best interest to be in her home. . . .

b. Pursuant to Tennessee Code Annotated § 36-1-113(i)(2), [Mother] has not made a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible. . . .

c. Pursuant to Tennessee Code Annotated § 36-1-113(i)(3), the court finds that [Mother] has not maintained regular visitation with the children. . . .

d. Pursuant to Tennessee Code Annotated § 36-1-113(i)(4), the court finds that a meaningful relationship has not been established between [Mother] and her children. . . .

e. Pursuant to Tennessee Code Annotated § 36-1-113(i)(5), the court finds that a change of caretakers and physical environment would have a negative impact on the children's emotional, psychological, and medical conditions. . . .

f. Pursuant to Tennessee Code Annotated § 36-1-113(i)(6), the court finds that [Mother] has committed brutality and neglect toward the children in that there is a final severe abuse order finding her to have committed severe child abuse due to her physical discipline of Kayden and Kameron.

g. Pursuant to Tennessee Code Annotated § 36-1-113(i)(7), the court finds that [Mother's] home environment is unhealthy and unsafe in that a jail is not an appropriate place to raise children.

h. Pursuant to Tennessee Code Annotated § 36-1-113(i)(9), the court finds that [Mother] has not paid child support consistent with the child support guidelines. . . .

i. Pursuant to other factors which may be considered pursuant to Tennessee Code Annotated § 36-1-113(i), the Juvenile Court finds that the children's strongest bonds are to each other. . . .

## CONCLUSIONS OF LAW

* * *

3. Pursuant to Tennessee Code Annotated § 36-1-113(g)(1) and as defined in Tennessee Code Annotated § 36-1-102(1)(A), the court finds by clear and convincing evidence that Respondent[] [Mother] [has] abandoned the children in that Respondent [Mother] failed to support the children for four months pr[e]ceeding incarceration and engaged in conduct prior to incarceration that exhibited a wanton disregard for the welfare of the children. . . .

4. Pursuant to Tennessee Code Annotated § 36-1-113(g)(2), the Court finds by clear and convincing evidence that Respondent[] [Mother] . . . [has] failed to substantially comply with the statement of responsibilities outlined in the permanency plans, though the obligations and responsibilities were ratified by the Court as reasonable and related to the reasons necessitating foster care.

5. Pursuant to Tennessee Code Annotated § 36-1-113(g)(3), the Court finds by clear and convincing evidence that Kayden, Kameron, and Kaleia have been in the custody of the State of Tennessee, Department of Children's Services for more than six (6) months preceding the filing of the termination of parental rights petition, and the conditions which led to the children's removal still persist; or other conditions persist which in all probability would cause the children to be subjected to further abuse and neglect which, therefore, prevent the children's return to the care of Respondent [Mother]. Further there is little likelihood that these conditions will be remedied at an early date so that the children can be safely returned to Respondent in the near future; and the continuation of the legal parent and child relationship greatly diminishes the children's chances of early integration into a safe, stable and permanent home.

* * *

10. Pursuant to Tennessee Code Annotated § 36-1-113(g)(14), the Court finds by clear and convincing evidence that Respondent [Mother] has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility for the child, and placing the child in [Mother]'s legal and physical custody would pose a risk of substantial harm to the  physical and psychological welfare of the child.

* * *

- 8 -

The trial court's written order terminating the parental rights of Mother and decree of guardianship was entered March 18, 2020, and filed on March 24, 2020. Mother filed a timely notice of appeal.

## II. ISSUES

We restate the issues raised by Mother as follows:

a. Whether the trial court properly held that grounds were established to terminate Mother's parental rights.

b. Whether the trial court properly held that termination of Mother's parental rights was in the best interest of the children.

c. Whether the final order contains the requisite findings of fact and conclusions of law under Tennessee Code Annotated section 36-1-113.

## III. STANDARD OF REVIEW

The standard of review in this non-jury case on appeal is *de novo* upon the record. *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995). There is a presumption of correctness as to the trial court's findings of fact, unless the preponderance of evidence is otherwise. Tenn. R. App. P. 13(d); *M.L.J. v. Johnson*, 121 S.W.3d 378, 380 (Tenn. Ct. App. 2003). However, no presumption of correctness attaches to a trial court's conclusions on issues of law. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000); Tenn. R. App. P. 13(d). Insofar as the trial court's determinations are based on its assessment of witness credibility, we will not reevaluate that assessment absent evidence of clear and convincing evidence to the contrary. *See Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

Parents have a fundamental right to the care, custody and control of their children. *Stanley v. Illinois*, 405 U.S. 645 (1972); *In Re Adoption of A.M.N.*, 215 S.W.3d 793, 809 (Tenn. 2007). This right is not absolute, however, and may be terminated in certain circumstances. *Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982); *State v. C.H.K.*, 154 S.W.3d 586, 589 (Tenn. Ct. App. 2004). A court may terminate a person's parental rights only if the party seeking termination proves by clear and convincing evidence (1) the existence of at least one statutory ground and (2) that termination is in the best interest of the child. Tenn. Code Ann. § 36-1-113(c).

Clear and convincing evidence exists when "there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (quoting *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). The clear and convincing evidence requirement "enables the fact-finder

to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T.*, 319 S.W.3d at 596 (citations omitted). The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not. *In re Audrey S.*, 182 S.W. 3d 838, 861 (Tenn. Ct. App. 2005); *In re M.A.R.*, 183 S.W. 3d 652, 660 (Tenn. Ct. App. 2005).

On appeal, Mother challenges the sufficiency of the evidence supporting only three of the grounds found against her, and she does not address the best interest analysis. The Tennessee Supreme Court has instructed that "in an appeal from an order terminating parental rights the Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of whether the parent challenges these findings on appeal." *In re Carrington H.*, 483 S.W.3d 507, 525-26 (Tenn. 2016). Accordingly, we consider the grounds not challenged on appeal, as well as the children's best interest.

## IV. DISCUSSION

In Tennessee, the termination of parental rights is governed by statutes which identify "'situations in which the state interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought.'" *In re Jacobe M.J.*, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (quoting *In re W.B. IV*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g)). Thus, a party seeking to terminate a parent's rights must prove: (1) the existence of at least one of the statutory grounds, and (2) that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c).

In the instant case, the trial court concluded that clear and convincing evidence existed to support the following grounds to terminate Mother's parental rights: (a) abandonment by failure to support; (b) abandonment by wanton disregard; (c) substantial noncompliance; (d) persistence of conditions; (e) severe child abuse; (f) sentenced to more than two years' imprisonment; and (g) failure to manifest an ability and willingness to assume custody. *See* Tenn. Code Ann. §§ 36-1-102(1)(A)(iv); 36-1-113(g)(1), (2), (3), (4), (5), (14).

### a.

Parental rights may be terminated on the ground of abandonment by an incarcerated parent for failing to support the child. Tenn. Code Ann. §§ 36-1-102(1)(A)(iv); 36-1-113(g)(1). At the time the termination petition was filed on January 22, 2019, this ground was established when:

A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and . . . has failed to support or has failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration . . . .

Tenn. Code Ann. § 36-1-102(1)(A)(iv) (2019). During the four months preceding the petition, Mother was continuously incarcerated. *Id.* Her incarceration began on September 21, 2017. Thus, the relevant four-month period for purposes of the statute is from May 20 through September 20, 2017.

From May 20 through September 20, 2017, Mother failed to financially support or make reasonable payments toward the support of the children. Mother related that she recalled working during that time; FSW testified that Mother reported working at both Burger King and Staffline. Mother also explained that because she was living with her sister, her only expense was her cell phone bill of $45-50 per month. However, despite her income and lack of expenses, only once did she attempt to provide support for the children. On another occasion, she provided some gifts.

Mother's support attempts amount to nothing more than token support, "support [that], under the circumstances of the individual case, is insignificant given the parent's means." *See In re Dustin M.*, No. M2019-01661-COA-R3-PT, 2020 WL 2036648, at * 8 (Tenn. Ct. App. Apr. 28, 2020); *In re Michael W.*, No. E2019-00107-COA-R3-PT, 2020 WL 405473, at *7 (Tenn. Ct. App. Jan. 23, 2020); Tenn. Code Ann. § 36-1-102(1)(B) & (D).[6] There is clear and convincing evidence to support the court's termination of Mother's rights on this ground.

**b.**

Parental rights may be terminated when a parent abandons a child by exhibiting a wanton disregard for the child's welfare. Tenn. Code Ann. §§ 36-1-102(1)(A)(iv); 36-1-113(g)(1). At the time the termination petition was filed, this ground was established when:

A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or

---

[6]Lack of willfulness may be raised as an affirmative defense to a parent's failure to pay support under Rule 8.03 of the Tennessee Rules of Civil Procedure. Tenn. Code Ann. § 36-1-102(1)(I). When such a defense is raised, the parent must establish it by a preponderance of the evidence. *Id.*

guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and . . . the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child. . . .

Tenn. Code Ann. § 36-1-102(1)(A)(iv) (2019). This provision "reflects the commonsense notion that parental incarceration is a strong indicator that there may be other problems in the home that threaten the welfare of the child." *In re Audrey S.*, 182 S.W.3d at 866. Incarceration itself does not satisfy the test for abandonment by wanton disregard; the court must find "by clear and convincing evidence that the parent's pre-incarceration conduct displayed a wanton disregard for the welfare of the child." *Id.* A "parent's incarceration serves only as a triggering mechanism that allows the court to take a closer look at the child's situation to determine whether the parental behavior that resulted in incarceration is part of a broader pattern of conduct that renders the parent unfit or poses a risk of substantial harm to the welfare of the child." *Id.* "[P]robation violations, repeated incarcerations, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of the child." *Id.* at 867-68.

Prior to Mother's incarceration, she exhibited wanton disregard for the children's welfare through her criminal conduct, substance abuse, failure to provide adequate support, and failure to comply with services. The severe child abuse upon Kayden and Kameron was the basis for Mother's guilty plea to attempted aggravated child abuse for which she was incarcerated. *See In re Chyna L.M.D.*, E2012-00661-COA-R3-PT, 2012 WL 3776699 (Tenn. Ct. App. Aug. 31, 2012). On March 30, 2017, she tested positive for marijuana and oxycodone. When asked to do additional tests, Mother refused to comply. Furthermore, as noted above, Mother did not provide support prior to her incarceration, failed to begin individual counseling and did not obtain stable housing. Significantly, she did not address concerns regarding her mental health. Accordingly, there is clear and convincing proof to support the trial court's termination of Mother's parental rights under this ground.

### c.

Parental rights may be terminated upon a finding of clear and convincing evidence that the parent is in "substantial noncompliance . . . with the statement of responsibilities in a permanency plan . . . ." Tenn. Code Ann. § 36-1-113(g)(2). The court must initially determine "that the requirements of the permanency plan are reasonable and related to remedying the conditions that caused the child to be removed from the parent's custody in the first place." *In re M.J.B.*, 140 S.W.3d 643, 656 (Tenn. Ct. App. 2004); *see In re Valentine*, 79 S.W.3d at 547. Such findings must be made in conjunction with the determination of substantial noncompliance, but if a trial court fails to make such findings,

- 12 -

the appellate court reviews the issue *de novo*. The court must also determine that "the parent's noncompliance is substantial in light of the degree of noncompliance and the importance of the particular requirement that has not been met." *In re M.J.B.*, 140 S.W.3d at 656. A "trivial, minor, or technical" deviation from the permanency plan's requirements does not qualify as substantial noncompliance. *Id.* at 656 (citing *In re Valentine*, 79 S.W.3d at 548). Improvements in compliance are construed in favor of the parent. *In re Valentine*, 79 S.W.3d at 549 (citing *State v. Defriece*, 937 S.W.2d 954, 961 (Tenn. Ct. App. 1996)). In considering the ground of substantial noncompliance, "[o]ur focus is on the parent's efforts to comply with the plan, not the achievement of the plan's desired outcomes." *In re Aiden R.*, No. E2015-01799-COA-R3-PT, 2016 WL 3564313, at *9 (Tenn. Ct. App. June 23, 2016).

At the time the termination petition was filed, Mother's cumulative responsibilities under the permanency plans were as follows: (1) pay child support; (2) complete a parenting assessment, follow recommendations, and demonstrate skills learned in parenting classes; (3) utilize effective and appropriate disciplinary methods; (4) complete an alcohol and drug assessment and follow recommendations; (5) complete random drug screens; (6) complete family violence classes, demonstrate skills learned, and refrain from engaging in domestic violence; (7) obtain and maintain stable housing and income; (8) provide proof of stability of utilities; (9) participate in the children's medical and educational plans; (10) ensure the children have a safe environment free from illegal activities; (11) participate in a home study; (12) visit the children; (13) resolve all legal issues and refrain from incurring additional charges; (14) complete a mental health assessment, follow recommendations, and provide proof thereof; and (15) participate in family counseling. These responsibilities were reasonable and related to the conditions that necessitated foster care.

Prior to her incarceration, Mother maintained contact with DCS, visited with the children, completed a parenting assessment and family violence classes, and began home parenting classes. She failed, however, to complete many other responsibilities designed to address major obstacles preventing reunification. She did not financially support the children, did not have stable housing, tested positive for marijuana and oxycodone and refused subsequent drug screens, admitted to marijuana and alcohol use, did not take advantage of mental health services, and never began individual counseling. After becoming incarcerated, any efforts by Mother completely ceased. *See In re Kason C.*, No. M2013-02624-COA-R3-PT, 2014 WL 2768003, at * 6 (Tenn. Ct. App. June 17, 2014). She did not send notes or gifts to the children and did not contact DCS to inquire about the children's wellbeing. Her participation in services at the prison began the same month of trial, not in the two years she had been incarcerated and not before the filing of the termination petition a year prior. *Cf. In re Madux F.*, No. E2019-01535-COA-R3-PT, 2020 WL 1893646, at *14 (Tenn. Ct. App. Apr. 16, 2020) (affirming ground where mother entered rehabilitation shortly before trial); *In re Emily N.I.*, No. E2011-01439-COA-R3-PT, 2012 WL 1940810, at *16 (Tenn. Ct. App. May 30, 2012) ("We believe that the

- 13 -

Parents' refusal to complete a number of the requirements until after the termination petition was filed . . . was simply '[t]oo little, too late.'") (citing *In re A.W.*, 114 S.W.3d 541, 546-47 (Tenn. Ct. App. 2003)).  The record clearly and convincingly supports the trial court's findings, and we conclude that the court did not err in terminating Mother's parental rights on the ground of failure to substantially comply with the reasonable requirements of the permanency plans.

**d.**

Under Tennessee Code Annotated section 36-1-113(g)(3), a parent's rights may be terminated when:

(A) The child has been removed from the home or the physical or legal custody of a parent or guardian for a period of six (6) months by a court order entered at any stage of proceedings in which a petition has been filed in the juvenile court alleging that a child is a dependent and neglected child, and:

(i) The conditions that led to the child's removal still persist, preventing the child's safe return to the care of the parent or guardian, or other conditions exist, that in all reasonable probability, would cause the child to be subjected to further abuse or neglect, preventing the child's safe return to the care of the parent or guardian,

(ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent or guardian, and

(iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable, and permanent home;

(B) The six (6) months must accrue on or before the first date the termination of parental rights petition is set to be heard[.]

In the instant case, the children were removed from Mother's care and custody in March 2017, upon allegations of dependency and neglect, specifically physical abuse.  *See* Tenn. Code Ann. § 36-1-113(g)(3)(A).  The termination petition was filed in January 2019, and the trial was held in January 2020, both of which occurred more than six months following removal.  *See id.*

At the time of trial, conditions persisted that prevented reunification.  *See* Tenn. Code Ann. § 36-1-113(g)(3)(A)(i).  Mother was still serving her eight-year sentence and

- 14 -

did not know when she would be released. Her contact with the children completely ceased for the two years prior to trial; she never sent notes or gifts to them and never asked DCS about them. She also did not complete individual counseling to address her mental health issues and her drug use remained a concern.

The fact that Mother waited until the month of trial before participating in any services offered in prison does not demonstrate that she would remedy conditions at an early date. Rather, such behavior reveals Mother incapable of reunifying with the children at an early date in the near future. *See* Tenn. Code Ann. § 36-1-113(g)(3)(A)(ii).

In view of the fact that the children live together, are bonded to one another, and are doing well, continuing Mother's relationship with them would negatively impact and diminish their ability to integrate into a safe and permanent home in the near future. *See* Tenn. Code Ann. § 36-1-113(g)(3)(A)(iii). We conclude that the trial court's termination of Mother's rights on the ground of persistence of conditions is supported by clear and convincing evidence in the record.

**e.**

A trial court may terminate a parent's rights if the parent "has been found to have committed severe child abuse . . . under any prior order of a court or is found by the court hearing the petition to terminate parental rights . . . to have committed severe child abuse against any child." Tenn. Code Ann. § 36-1-113(g)(4). "Severe child abuse" is defined as "[t]he knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death and the knowing use of force on a child that is likely to cause serious bodily injury or death." Tenn. Code Ann. § 37-1-102(b)(27)(A)(i). "Serious bodily injury" includes but is not limited to "injuries to the skin that involve severe bruising . . . including those sustained by whipping children with objects." Tenn. Code Ann. § 39-15-402(c).

As found by the trial court, Kayden and Kameron were victims of severe child abuse perpetrated by Mother. The record does not reflect that the order was appealed. *See In re Trinity H.*, No. M2020-00440-COA-R3-PT, 2020 WL 5110312, at *10 (Tenn. Ct. App. Aug. 28, 2020) (affirming ground based on a prior finding of severe child abuse perpetrated against a child's siblings when "[t]he record contains no hint that Father ever appealed the finding of severe child abuse"). As Mother does not challenge the finality or the validity of the order on appeal, the issue of severe child abuse is *res judicata*. *See In re Dakota C.R.*, 404 S.W.3d 484, 497 (Tenn. Ct. App. 2012); *In re Heaven L.F.*, 311 S.W.3d 435, 439-40 (Tenn. Ct. App. 2010) (holding that the *res judicata* doctrine applies "to prevent a parent from re-litigating whether []he committed severe child abuse in a later termination of parental rights proceeding when such a finding had been made in a previous dependency and neglect action") (citing *State v. Tate*, No. 01-9409-CV-00444, 1995 WL 138858, at *5 (Tenn. Ct. App. Mar. 31, 1995)). Although it is true that Mother severely abused only two

- 15 -

of the three children, the statutory ground allows termination when a parent commits severe child abuse "against any child." Tenn. Code Ann. § 36-1-113(g)(4) (emphasis added); *see In re Trinity H.*, 2020 WL 5110312, at * 3 (affirming ground based on order adjudicating child's siblings as victims of severe child abuse). Thus, clear and convincing evidence supports the court's termination of Mother's parental rights to all three children on the ground of severe child abuse.

**f.**

Parental rights may be terminated when a parent is serving a sentence of two or more years for severe child abuse. The statute at the time of the termination petition read as follows:

> The parent or guardian has been sentenced to more than two (2) years' imprisonment for conduct against the child who is the subject of the petition, or for conduct against any sibling or half-sibling of the child . . . that has been found under any prior order of a court or that is found by the court hearing the petition to be severe child abuse, as defined in [Tenn. Code Ann.] § 37-1-102. . . . "[S]entenced" shall not be construed to mean that the parent or guardian must have actually served more than two (2) years in confinement, but shall only be construed to mean that the court had imposed a sentence of two (2) or more years upon the parent or guardian[.]

Tenn. Code Ann. § 36-1-113(g)(5) (2019). In the instant case, Mother entered a guilty plea to attempted aggravated child abuse for the events that led to the adjudication of Kayden and Kameron as victims of severe child abuse. In a plea deal, Mother agreed to an eight-year sentence. *See In re Adrian M.-M.*, No. W2019-00931-COA-R3-PT, 2019 WL 5595846, at *11 (Tenn. Ct. App. Oct. 30, 2019). Accordingly, clear and convincing evidence supports the trial court's termination of Mother's parental rights on this ground.

**g.**

Parental rights may be terminated where a court finds clear and convincing evidence that "[a] parent or guardian has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child[.]" Tenn. Code Ann. § 36-1-113(g)(14). *See In re Maya R.*, No. E2017-01634-COA-R3-PT, 2018 WL 1629930, at *7 (Tenn. Ct. App. Apr. 4, 2018). Two prongs must be established by clear and convincing evidence: the parent "failed to manifest 'an ability and willingness to personally assume legal and physical custody or financial responsibility of the child" and

"placing the child in the parent's 'legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child.'" *In re Neveah M.*, ___ S.W.3d ___, 2020 WL 7250844 at *11 (Tenn. Dec. 10, 2020) (quoting Tenn. Code Ann. § 36-1-113(g)(14)).

As noted above, Mother has failed to manifest an ability to assume custody of the children. Despite somewhat complying with the permanency plan prior to her incarceration, Mother failed to address several issues. She did not resolve her lack of suitable housing and did not financially support the children. She failed a drug screen and refused to comply with later testing requests. She did not address her mental health issues and never began individual counseling. Once Mother was incarcerated, she never sent notes or gifts to the children and did not inquire about them. She waited until the month of trial before taking advantage of any services offered in prison.

Further, despite expressing at trial her desire to maintain a relationship with the children, Mother's actions proved otherwise. *See In re M.E.N.J.*, No. E2017-01074-COA-R3-PT, 2017 WL 6603658, at *6-7 (Tenn. Ct. App. Dec. 27, 2017) (acknowledging that mother seemed to love the children and desired to see them during visits but concluding that she failed to manifest a willingness to assume custody by refusing assistance from DCS). Mother did not take full advantage of the services provided by DCS, particularly ones offered to address her mental health. She did not make any effort to maintain contact with the children during the two years prior to trial and did not inquire as to their wellbeing in foster care. Additionally, she refused drug screens and admitted to using drugs. She failed to manifest a willingness to assume custody of the children.

Turning to the second prong of Tennessee Code Annotated section 36-1-113(g)(14) - whether placing the child in the parent's custody "would pose a risk of substantial harm to the physical or psychological welfare of the child," we have explained:

> The courts have not undertaken to define the circumstances that pose a risk of substantial harm to a child. These circumstances are not amenable to precise definition because of the variability of human conduct. However, the use of the modifier "substantial" indicates two things. First, it connotes a real hazard of danger that is not minor, trivial, or insignificant. Second, it indicates that the harm must be more than a theoretical possibility. While the harm need not be inevitable, it must be sufficiently probable to prompt a reasonable person to believe that the harm will occur more likely than not.

*In re Virgil W.*, No. E2018-00091-COA-R3-PT, 2018 WL 4931470, at *8 (Tenn. Ct. App. Oct. 11, 2018) (quoting *Ray v. Ray*, 83 S.W.3d 726, 732 (Tenn. Ct. App. 2001)).

The children would be at a substantial risk of harm if returned to Mother's care. Even assuming Mother, who was still incarcerated at the time of trial, were released, there

is no evidence before us that she would be capable of immediately assuming custody of the children. It is significant that Mother was incarcerated because she had severely abused two of the children. *See* Tenn. Code Ann. § 37-1-130(c) ("No child who has been found to be a victim of severe child abuse shall be returned to the custody or residence of any person who engaged in or knowingly failed to protect the child from the brutality or abuse unless the court finds on the basis of clear and convincing evidence that the child will be provided a safe home free from further such brutality and abuse."). In our view, returning the children to Mother's care would risk substantial harm to the children. There is clear and convincing evidence to support the trial court's legal conclusion that Mother had failed to manifest an ability and willingness to assume custody. Accordingly, we affirm the trial court's termination of Mother's parental rights on this ground.

## Best Interest Analysis

When at least one ground for termination of parental rights has been proven, the petitioner must prove and the trial court must then determine whether termination is in the best interest of the child. *White v. Moody*, 171 S.W.3d 187, 192-93 (Tenn. Ct. App. 2004). In making such determination, the court considers the following non-exclusive factors:

> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

> (6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

> (7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether

there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i). Not every factor need be established to support a determination that termination of parental rights is in the child's best interest. *State v. T.S.W.*, No. M2001-01735-COA-R3-CV, 2002 WL 970434, at *3 (Tenn. Ct. App. May 10, 2002). "When the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child, which interests are hereby recognized as constitutionally protected and, to that end, this part shall be liberally construed." Tenn. Code Ann. § 36-1-101(d).

The factors overwhelmingly weigh in favor of termination of Mother's parental rights. Mother failed to make an adjustment of circumstance to make it safe and in the children's best interest to be in Mother's home. *See* Tenn. Code Ann. § 36-1-113(i)(1). She had been incarcerated for the two years prior to trial and her circumstances were unchanged. During her incarceration, Mother did not have any contact with the children. Mother also failed to effect a lasting adjustment after reasonable efforts by DCS, and such a lasting adjustment did not reasonably appear possible. *See* Tenn. Code Ann. § 36-1-113(i)(2). Prior to her incarceration, she failed to address major issues such as housing, her drug abuse, and her mental health. She neglected to take advantage of any services arranged for her benefit. Once Mother became incarcerated, any efforts she was making ceased. She never contacted the children or otherwise inquired about their wellbeing. The lack of regular contact with the children resulted in the lack of a meaningful relationship between Mother and her children. *See* Tenn. Code Ann. § 36-1-113(i)(3), (4). Also, Mother did not pay child support consistent with the guidelines prior to her incarceration. *See* Tenn. Code Ann. § 36-1-113(i)(9).

Mother physically abused two of the three children, which was the basis of her criminal conviction. *See* Tenn. Code Ann. § 36-1-113(i)(6). Additionally, she could not provide a healthy and safe environment free from use of alcohol and controlled substances. *See* Tenn. Code Ann. § 36-1-113(i)(7). Further, her mental health remains a concern. *See* Tenn. Code Ann. § 36-1-113(i)(8). Finally, changing the children's caretaker would negatively impact their welfare. *See* Tenn. Code Ann. § 36-1-113(i)(5). The children were doing well in foster care, all placed together and bonded. DCS was working with

- 19 -

permanency specialists to find a pre-adoptive home to place all three children. Removing them from their foster home where they were getting needed services and were progressing would not be in their best interest. From the totality of the circumstances, there is clear and convincing proof to support the trial court's finding that termination of Mother's parental rights is in the children's best interest.

Tennessee Code Annotated section 36-1-113(k) provides that in a termination proceeding, "[t]he court shall enter an order that makes specific findings of fact and conclusions of law . . . ." *See also* Tenn. R. Civ. P. 52.01 ("In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment."). "There is no bright-line test by which to assess the sufficiency of factual findings, but the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue." *In re O.W.*, No. W2019-01127-COA-R3-PT, 2020 WL 97727, at *9 (Tenn. Ct. App. Jan. 9, 2020) (quoting *Lovlace v. Copley*, 418 S.W.3d 1, 35 (Tenn. 2013)).

Mother argues that "the trial court failed to make sufficient findings of fact [with] respect to all contested grounds for termination." Upon our review, we find that the final order contains detailed findings of fact and complete conclusions of law for each ground. In that the final order has sufficient findings of fact and conclusions of law, Mother is not entitled to relief on this issue.

## V. CONCLUSION

For the foregoing reasons, we affirm the decision of the trial court and remand for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to the appellant Karen Rene A.

_____
JOHN W. MCCLARTY, JUDGE